## PEOPLE v. SHAVER.

1. BURGLARY—SUFFICIENCY OF INFORMATION.
   2 How. Stat. §§ 9132, 9133, merely prescribe different degrees of punishment for burglary, and do not create new offenses. An information for burglary, therefore, may still be laid as at the common law.

2. SAME—INTENT.
   An information charging the breaking and entering of a dwelling house in the night-time, with intent to commit a larceny, is a good common-law information for burglary, larceny being a felony at common law.

3. CRIMINAL LAW—TESTIMONY OF ACCOMPLICE—INSTRUCTIONS.
   It is error to charge the jury in a criminal case that the testimony of an accomplice, if corroborated, is to be taken as true.

Exceptions before judgment from Eaton; Smith, J. Submitted November 21, 1895. Decided December 24, 1895.

Ira Shaver was convicted of burglary. Reversed.

*McPeek & Jones* and *Lyman H. McCall,* for appellant.

*Horace S. Maynard,* Prosecuting Attorney, for the people.

MONTGOMERY, J. The respondent was convicted of

burglary, and brings the case here on exceptions. It is contended that the information fails to charge any offense known to the law. The charge, after fixing the time and place, is that the respondent, at about the hour of 1 o'clock in the night-time, with force and arms, the dwelling house of Benjamin F. Rowson, there situate, feloniously did break and enter, with intent the goods and chattels of said Benjamin F. Rowson, in said dwelling house then and there being, feloniously to steal, take, and carry away, no person then and there being, being put in fear, etc.

2 How. Stat. § 9132, reads as follows:

"Every person who shall break and enter any dwelling house in the night-time, with intent to commit the crime of murder, rape, robbery, or any other felony, or larceny, or, after having entered with such intent, shall break any such dwelling house in the night-time, any person being lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on any person being lawfully therein, shall be punished by imprisonment in the state prison not more than twenty years."

Section 9133 is as follows:

"Every person who shall break and enter any dwelling house in the night-time, with such intent as is mentioned in the preceding section, or who, having entered with such intent, shall break such dwelling house in the night-time, the offender not being armed nor arming himself in such house with a dangerous weapon, nor making any assault upon any person then being lawfully therein, shall be punished by imprisonment in the state prison not more than fifteen years."

The contention is that an information for burglary should so describe the offense as to bring it within one or the other of these sections, and that, if an attempt is made to bring it under the latter section, it is the duty of the prosecutor to aver that the accused was not armed, etc. The counsel for the people contends, on the other

hand, that the statute creates no new offense, but provides for different degrees of punishment for burglary, the punishment being augmented if the offender is armed, etc., but if not armed, or if the offense is not so charged, the lesser penalty is to be inflicted, and that the offense may still be charged as at the common law. Both parties rely upon *Harris* v. *People*, 44 Mich. 305. That case was one of an attempt to commit burglary, and the question involved was whether it was necessary to describe the attempted burglary as coming within one or the other of the above-quoted sections. This was held unnecessary, and while we recognize that, as the charge was a charge of an attempt, the case is not necessarily controlling, the reasoning of the court, if followed, rules this case. Mr. Justice GRAVES, speaking for the court, said:

"Burglary is a common-law offense, and not a crime ordained by legislation; and it is a single or identical offense, as it was originally. The statute does not carve it into two. It exposes it to different grades of punishment, according as it may or may not be accompanied by the incidents specified in the statute. It may be laid according to the common law, and without referring to the facts on which the imposition of the higher penalty depends, but in such case the punishment cannot exceed the lesser penalty. The accusation will support nothing more. Where the facts are supposed to warrant it, and the higher penalty is contemplated, the crime must be described with the attending facts which justify that penalty."

It is true, this language is followed by the statement:

"The various breakings resembling burglary which have been declared criminal by the legislature are distinguishable from the ancient offense of the common law. They owe their definition to the statute, and the statute must be consulted to ascertain their ingredients. When they are charged, they must be set forth in substance as in the statute, with all descriptive incidents, whether negative or otherwise."

But the learned justice is here plainly referring to those breakings which are for the first time constituted offenses by statute, and which are not such at the common law. We think the reasoning of this case is sound, and it follows that a common-law information for burglary is still good.

It is suggested that the information is not good as a common-law information, for the reason that at the common law burglary consisted of the breaking and entering of a dwelling house in the night-time with intent to commit a felony, and that this information charges the intent to commit a larceny, which, it is said, may or may not be a felony. This objection is without force. Larceny is a common-law felony. See *Drennan* v. *People,* 10 Mich. 169.

The case of the people depended in a large part on the testimony of one Perkins, who was indicted with respondent, and, if his story is true, was a participant in the crime. The circuit judge, in charging the jury, said:

"Now, Mr. Perkins, who has taken the stand here, is known in the law as an accomplice, or, as it is sometimes said, he has turned state's evidence. Now, his testimony is governed by the same rules that govern the testimony of other witnesses, and its credibility is entirely for you. You measure up his testimony, gentlemen, as you measure up the testimony of any other witness upon the stand. Has he told a reasonable story? Is it consistent? You also take into consideration his interest in the case, and his surroundings, and the situation in which he is placed, and from it determine whether he has told the truth about this matter or not. It follows just as naturally as anything can, if you believe him, Mr. Shaver should be convicted,—if you believe what he said here. On the other hand, if you do not believe a word he said; if you believe he has sworn to a lie in this case, and you do not believe the other testimony in the case that tends to convict Mr. Shaver; and, I think I can safely say, if you do not believe him,—Mr. Shaver ought to be acquitted. I don't think there is any error in that, either. If you believe the testimony of Mr. Perkins in this case,—

believe he has told the truth about this matter,—Mr.
Shaver should be convicted. If you do not believe him,
he should be acquitted. Now, you weigh up his testi-
mony by the rules I have given you as to the other wit-
nesses, taking into consideration his surroundings, his
interest, and all the other facts and surroundings that
surround him; and, if you are satisfied of its truth, then
you should believe his testimony."

At the conclusion of the charge, and after an officer
was sworn, the court said to the jury:

"The prosecutor has called my attention to the fact
that probably you may have been misled by what I said
about the testimony of Mr. Perkins. I said to you that,
if you believed Mr. Perkins, this man should be convicted,
and I do not recede from that, and that, if you do not
believe him, he should be acquitted, and I do not recede
from that; but, gentlemen, it is your duty, in determining
whether Mr. Perkins has told the truth or not, to look
the case all over,—the testimony of all the witnesses.
Has he been corroborated? Has his testimony been cor-
roborated by other witnesses, or by the surroundings in
the case? If you believe it is, then you would believe
him. If you do believe him, then you should take the
course which I have suggested to you. In other words,
I did not wish to be understood it all depended upon his
testimony, because you weigh all the other testimony,
and all the surroundings in the case, to determine
whether the story that he has told is a true story or not."

We think this instruction open to the construction
placed upon it by respondent's counsel, i. e., that, if the
jury should find Perkins' testimony corroborated, then,
under the charge, they were bound to accept his testi-
mony as true. This would not by any means follow, as
matter of law. Much would depend upon the extent of
the corroboration, and whether the corroborative testi-
mony was in itself credible. The fact that the witness
himself was an offender against the law, and an alleged
accomplice, bore upon his credibility; and, while the jury
might convict respondent on his uncorroborated testi-
mony, they were not bound to do so, nor is it the rule

that, as matter of law, they are bound to accept his testimony as true, when corroborated. If such were the case, the testimony of two accomplices showing guilt would leave no room for escape. The damaging error in this instruction is the more apparent when it is considered that the defense offered testimony tending to prove an *alibi.*

Exceptions will be sustained, and a new trial ordered.

The other Justices concurred.