PEOPLE *v.* COVELESKY.

1. CRIMINAL LAW—ROBBERY—TRIAL—GOOD CHARACTER—INSTRUC-
TION.

In a prosecution for robbery an instruction that "Good
character may not only raise a doubt of guilt, which other-
wise exists, but bring conviction of innocence," *held,*
not tantamount to an instruction that "Good character
would only avail the prisoner in a doubtful case, and
would be of no avail in a case where there was positive
testimony as to the guilt of the accused."

2. INDICTMENT AND INFORMATION—ROBBERY—STATUTORY OFFENSE
—"FROM THE PERSON."

An information for robbery, which followed the language
of 3 Comp. Laws 1915, § 15206, except that, instead of
the words, "from the person of" the words "from the
possession and against the will of" were used, *held,* not
invalid.

3. CRIMINAL LAW—ROBBERY—EVIDENCE—SUFFICIENCY.

In a prosecution for robbery, evidence of defendant's par-
ticipation in the alleged offense, *held,* sufficient to carry
the question to the jury.

4. ROBBERY—COMMON-LAW DEFINITION.

Robbery at common law is defined as "the felonious taking
of personal property in the possession of another from his
person or immediate presence, and against his will, ac-
companied by means of force or fear," and it is robbery
whether the taking be strictly from the person of an-
other, or in his presence only.

5. STATUTES—CONSTRUCTION—COMMON-LAW MEANING ASSUMED—
CRIMINAL LAW.

In the construction of statutes, when words are adopted
having a settled, definite, and well known meaning at
common law it is to be assumed they are used with the
sense and meaning which they had at common law unless
a contrary intent is plainly shown.

6. INDICTMENT AND INFORMATION—STATUTORY OFFENSES—ADOPTING WORDS OF STATUTE.

While it is the part of wisdom to follow approved forms which have stood the test, and a requisite to the validity of an information charging a statutory offense that the essential facts constituting the crime be set forth in substance with sufficient certainty to advise the accused of the charge against him and enable the court to pronounce a proper judgment in case of conviction, it is not imperative to always adopt the exact words of the statute provided other language of like import and certainty is used.

Error to recorder's court of Detroit; Keidan (Harry B.), J. Submitted October 14, 1921. (Docket No. 184.) Decided December 21, 1921.

Alexander Covelesky was convicted of the crime of robbery, and sentenced to imprisonment for not less than 10 nor more than 20 years in the State prison at Jackson. Affirmed.

*Chawke & Sloan,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *John V. Brennan,* Assistant Prosecuting Attorney, for the people.

STEERE, C. J. On July 2, 1920, defendant Alexander Covelesky was convicted in the recorder's court of the city of Detroit of the alleged statutory crime of robbery, the memorandum of conviction appearing in this record being "Guilty as charged. Robbery, while armed, with intent, if resisted, to kill or maim." He was thereafter, on the 6th day of July, 1920, sentenced by the court to the State prison at Jackson for a period of not less than 10 nor more than 20 years, with a recommendation of 15 years.

His counsel bring the case to this court for review

on four assignments of error, relating, as summarized
by counsel,—

"to the invalidity of the information and that it
charged the defendant with no offense known to the
law; * * * to the invalidity of the verdict of the
jury that brought in the defendant guilty of robbery
while armed, with intent to kill him, if resisted, with
which offense he was not charged in the information
filed against him; * * * to the sentence imposed
upon the defendant for the offense of robbery while
armed with intent to kill if resisted, which offense
was not pleaded or stated in the information filed
against the defendant; * * * to the correctness
of that portion of the court's charge wherein he
charged with reference to good character."

Defendant's complaint of the charge as to character
is that the court stated in effect to the jury that good
character would only avail the prisoner in a doubtful
case, and would be of no avail where there was posi-
tive testimony as to the guilt of the accused. We are
not persuaded that the charge upon that subject was
misleading in the particular claimed. The court
charged on the subject of character as follows:

"Gentlemen of the jury, there has been some testi-
mony in this case as to the good reputation of the
defendant for truth and veracity and for being a
peaceful and law-abiding citizen. I charge you, that
that testimony you should consider it carefully in
passing upon the guilt or innocence of the defendant
at the bar; and in determining what weight you will
give to the testimony of the witnesses in this case.
Good character is an important fact with every man
and never more so than when put on trial for an
offense which is rendered improbable by a uniform
course of life which may have been or is wholly in-
consistent with any such crime. Good character may
not only raise a doubt of guilt, which otherwise exists,
but bring conviction of innocence, and as to what
weight you will give the testimony touching his char-
acter, you must determine in view of the other evi-

dence in the case, ascertaining what opportunity these people, who have testified to his good reputation have had to form an opinion, which is entitled to your consideration touching that subject.   I charge you, also, that if the evidence in this case carries a conviction of the truth of guilt, beyond a reasonable doubt in the minds of the jury, that is, if it becomes evidence convincing and satisfying the minds and conscience of the jury of the truth of guilt of the accused, beyond all reasonable doubt, then character, however grand and noble in the past, must give way to the inevitable result of crime, for crime washes out and makes blank past history of good character.   However good a man's character in the past, if the proof is clear and convincing of the guilt of the accused, then it would be the duty of the jury to say so.   When there is no reasonable doubt of the defendant's guilt, it then becomes the solemn duty of the jury to say they believe that the defendant at the bar is guilty."

Counsel for defendant quote from the foregoing as a misleading error the following excerpt:   "Good character may not only raise a doubt of guilt, which otherwise exists, but bring conviction of innocence." While this sentence is made slightly cloudy by its imperfect parenthetical phrase, we are unable to follow counsel's contention that it is tantamount to telling the jury "that good character would only avail the prisoner in a doubtful case and would be of no avail in a case where there was positive testimony as to the guilt of the accused."

In *People* v. *Garbutt,* 17 Mich. 9, it is said:   "Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence."   Omission of "would not" by the trial court in attempting this quotation furnishes the basis of defendant's claim.   The jury were, however, told in effect that good character might not only raise a doubt of guilt but bring to their minds conviction of innocence; that good character was an "important

fact," and they should consider the testimony in relation to it carefully. They were also told that the guilt of the accused must be proven beyond all reasonable doubt and the presumption of innocence "abides with him throughout the taking of testimony and throughout your deliberations until the State convinces your minds and the minds of each one of you, beyond all reasonable doubt, of defendant's guilt." The instruction as to character taken in its entirety certainly gave no intimation that anything which raised a doubt of the accused's guilt could militate against him. It could not confuse or mislead the jury in the particular complained of.

The three other assignments relate to alleged invalidity of the information and claimed error in instructing the jury as to the nature of the charge against the accused. The information follows the form found in Tiffany's Criminal Law charging robbery while armed, etc., as provided by statute (now found in 3 Comp. Laws 1915, § 15206), except that the pleader instead of "from the person of" used the expression "from the possession and against the will of him, the said Stanley Kelinak," etc. The court when instructing the jury said the information "charges the crime known in the law as robbery, while armed, with intent, if resisted, to kill or maim," and then instructed them upon the subject at considerable length, stating amongst the essential elements of the offense, it must appear that defendant being armed with a dangerous weapon assaulted Kelinak, that money was taken from him "by force or violence, or by putting him in fear, and that it was *taken from his person.*"

Defendant's counsel contend that by failing to allege the money was taken from Kelinak's person the information failed to charge the offense of robbery, was therefore fatally defective and the conviction under it void, it being an essential element of the crime

of robbery that the property be taken from the person of the party robbed, which was neither charged nor proven in this case.

In outline the proof introduced by the prosecution showed that between the hours of 10 and 11 p. m. on November 2, 1919, the complaining witness Kelinak was in his home on Campbell avenue in the city of Detroit in his bedroom engaged in putting his little boy to bed while his wife was in another bedroom nursing her baby preparatory to retiring when three men, two of them being Julius Kozlowski and defendant Alexander Covelesky, came into their house and Covelesky showing an officer's badge drew a revolver and seized Kelinak by the throat while one of the other men took from a bureau in which Kelinak had placed it $962 of his money. Alarmed by the disturbance Mrs. Kelinak ran from her bedroom screaming and was knocked down by Kozlowski who was standing by the door and who then ran with the unknown man out of the back door, quickly followed by Covelesky who before going struck Kelinak, as he ran into the kitchen, in the face knocking him down and putting out one of his eyes. People in the vicinity were aroused by Mrs. Kelinak's screaming and hurried to the home where they found Kelinak seriously injured and were told what had happened, but his assailants were then gone. A witness who was on the street and heard the alarm saw an empty Studebaker auto standing near and took its license number about the time a man ran up and drove it away, taking in two passengers a short distance down the street. Officers were called and Kelinak taken to a hospital where he remained under treatment for some time. He and his wife identified defendant Covelesky and Kozlowski as their assailants, whom they recognized as having visited their house a few days before with another man and offered to sell them whisky, which Kelinak

said they were making at Hamtramck and Covelesky was delivering. Covelesky owned a Studebaker car having a license number corresponding with that taken by the witness on the night in question and given to the officers. His defense was an *alibi*. While on the stand as a witness in his own behalf he admitted having previously visited the home of Kelinak, who he said sold whisky and he had gone there with others to buy a drink, but denied having himself engaged in that business or having been near Kelinak's home on the night in question. There was abundant testimony of his participation in the alleged offense to carry the question to the jury.

When instructing the jury the court made no reference to the fact that it was neither charged in exact words in the information nor shown by the evidence that the money claimed to have been stolen from Kelinak was directly "taken from his person," but the jury having found defendant "guilty as charged" of "robbery, while armed with a dangerous weapon" appear to have rightly sensed and applied the essentials of common-law robbery to the facts in the case.

Robbery is defined as "the felonious taking of personal property in the possession of another from his person or immediate presence, and against his will, accompanied by means of force or fear."—Black's Law Dictionary.

"And so it is (robbery) whether the taking be strictly from the person of another, or in his presence only; as where the robber by menaces and violence puts a man in fear and drives away his sheep or his cattle before his face." 4 Blackstone's Com. p. 242.

"Robbery at common law is defined as the felonious taking of money or goods of value from the person of another or in his presence, against his will, by violence or putting him in fear. This definition has

been followed by most of the statutes, and even where the language has been varied sufficiently to sustain, by a literal interpretation, a narrower definition of the offense, it has usually been held that it could not be presumed that the legislature intended to change the nature of the crime as understood at common law." 23 R. C. L. p. 1139.

"Robbery, at common law, is the taking with intent to steal, of personal property in possession of another, from his person or in his presence, by violence or putting him in fear."    34 Cyc. p. 1796.

"To constitute robbery, it is essential that there be a 'taking from the person.'    To satisfy this requirement, it is sufficient that property be taken 'in the owner's presence.' "    34 Cyc. p. 1798.

"It is often stated that an essential and distinguishing characteristic of robbery is the fact that the felonious taking must be from the person of another, but by the great weight of authority, the words 'taking from the person of another,' as used in connection with the common-law definition of robbery, are not restricted in application to those cases in which the property taken is in actual contact with the person of the one from whom it is taken, but include within their meaning the taking by violence or intimidation from the person wronged, in his presence, of property which either belongs to him or which is under his personal    protection and control.    And where such words have been incorporated into statutes defining robbery, they have received the same construction." 23 R. C. L. pp. 1142, 1143.

The significance of the set phrase "from the person" in robbery is elaborated in 2 Bishop's New Crim. Law, §§ 1177, 1178, as follows:

"1. The doctrine is, that since robbery is an offense as well against the person as the property, the taking must be from what the law terms the person.    But—
"2. The meaning is, not that the taking must necessarily be from the actual contact of the body,
217 Mich.—7.

but it suffices when only from under the personal protection, And—

"3. The personal protection is interpreted to cover all one's effects within a not easily defined distance over which his presence may be deemed to have sway; as, says Hale, 'if a thief come into the presence of A, and with violence and putting A in fear drives away his horse, cattle, or sheep,' he commits robbery. The better expression is that—

"4. Employing this word in the meaning just explained, a taking in the presence of an individual put in fear, is, in law, a taking from his person.    Thus—

"5. One who binds another in one room of his house, and compels him to tell where valuables may be found in another room; or confines another in his smokehouse fifteen steps from the dwelling house, commits robbery by feloniously taking the sought-for things from the other room or building."

These texts are fortified by an abundant citation of decisions, both old and recent, from many jurisdictions.

To that aspect of the inquiry we note *O'Donnell* v. *People,* 224 Ill. 218 (79 N. E. 639, 8 Ann. Cas. 123), and *State* v. *Calhoun,* 72 Iowa, 432 (34 N. W. 194), pertinent in the particular that in those States as here the crime of robbery is also created and defined by statute, and the taking is limited in phraseology to "from the person of another."

In the *O'Donnell Case* the court said amongst other things:

"The best rule of construction is to construe a statute as close to the reason of the common law as may be consistent with the terms employed.    The words 'from the person of another,' found in our statutory definition of robbery, must be held to have been used in the same sense and with the same meaning that these terms had acquired at common law at the time the statute was enacted, and the offense of robbery under the statute may be committed by violence or putting in fear, and feloniously taking money or other things of value from the person or

in the presence and under the immediate control and possession of the person assaulted."

The Iowa statute yet more closely resembles ours by not only limiting the taking in definition to "from the person of another" but, as here, divides robbery into two degrees, with different grades of punishment according to whether the offense is aggravated by the robber being armed or otherwise. In the *Calhoun Case* the court, in discussing the limitation then urged by the defense, said:

"The preposition 'from' does not convey the idea of contact or propinquity of the person and property. It does not imply that the property is in the presence of the person. The thought of the statute, as expressed in the language, is that the property must be so in the possession or under the control of the individual robbed, that violence or putting in fear was the means used by the robber to take it. If it be away from the owner, yet under his control, in another room of the house, as in this case, it is nevertheless in his personal possession; and if he is deprived thereof, it may well be said it is taken from his person. Goods are called personal property in the law, and presumed to accompany the person."

In the instant case proofs of the prosecution show graphically that Kelinak's money was taken from his immediate personal presence, control and protection, out of the bureau in which he had placed it in his bedroom where he then was, he at the same time being held by the throat and covered with a revolver, terminating as the robbers left in a brutal battery which rendered him helpless and disfigured for life.

In Tiffany's Criminal Law (5th Ed.), the chapter relating to robbery (p. 1063 *et seq.*) quotes our statutory provisions on the subject, contains forms for informations, states and discusses in detail what must be proved to establish the crime of robbery, including

that the taking must be "from the person of another." Of this element it is said:

"The goods must be proved to have been taken from the person. It is not necessary that the property should actually be taken from off the person of the party robbed; if it is taken in his presence, it is sufficient; for taking it in his presence is in law a taking from the person."

A well recognized rule for construction of statutes is that when words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown. In the statute under which defendant was convicted (§ 15206) we find the familiar words rob, robber, robbed, appearing four times as follows:

"If any person shall assault another, and shall feloniously rob, steal and take from his person any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, with intent, if resisted, to kill or maim the person robbed, or if, being so armed, he shall wound or strike the person robbed, he shall be punished," etc.

The information charging this statutory offense in standard form, with the single deviation noted, after formal statement of parties, time, place, etc., charges that defendant made an assault upon Kelinak, putting him "in bodily fear and danger of his life" and $962 in lawful money, of that value, personal property of Kelinak,—

"from the possession and against the will of him, the said Stanley Kelinak, then and there wilfully, unlawfully and feloniously and by force and violence did steal, rob, take and carry away; and that he, the said Alexander Covelesky, was then and there, to wit: at the time of committing the assault and robbery aforesaid, armed with a dangerous weapon, to wit: a re-

volver pistol, with intent, if resisted, him, the said
Stanley Kelinak, to kill or maim, contrary to the form
of the statute in such case made and provided," etc.

Would the set phrase "from the person of" more
closely express even to the technical mind the fact that
the robbery was committed and the money taken in
Kelinak's presence? The language used would cer-
tainly make plain to any person of common under-
standing that Kelinak was "then and there" an in-
terested witness of all, an unwilling participant in
part, of the activities described; and that the money
then taken from his possession, stolen and carried
away by force and violence, while he was "then and
there" put in bodily fear and danger of his life, was
"taken in his presence," which, as stated by Tiffany,
"is in law a taking from his person."

While it is the part of wisdom to follow approved
forms which have stood the test, and a requisite to the
validity of an information charging a statutory offense
that the essential facts constituting the crime be set
forth in substance with sufficient certainty to advise
the accused of the charge against him and enable the
court to pronounce a proper judgment in case of con-
viction, it is not imperative to always adopt the exact
words of the statute provided other language of like
import and certainty is used.

Counsel for defendant cite and emphasize *People*
v. *Calvin,* 60 Mich 113, wherein it is said that the
common-law crime of robbery is "superseded by the
statute, and punished only when prosecuted under one
of the provisions of the statute, and the offense must
be laid in conformity therewith," and that a "common-
law information for robbery is not permissible in this
State, but the crime must be laid under the statute."
While some things are said in that opinion not easily
reconcilable with the views expressed upon a like
subject in *Harris* v. *People,* 44 Mich. 305, and *People*

v. *Shaver,* 107 Mich. 562, as we view the information it does not purport to be, and is not, laid under the common law, but under the statute quoted and, as directed in the *Harris Case* amongst others, the ingredients of the offense specified in the statute are "set forth in substance," with descriptive incidents.

Upon the trial of this case the question of the sufficiency of the information was not raised by objection, motion or request to charge, nor the point here urged called to the attention of the court in any manner so far as appears. Under similar circumstances the court in *People* v. *Brott,* 163 Mich. 150, declined to entertain a technical objection to the information, "being satisfied that substantial justice has been done." In this case, however, we are of opinion that the substantial facts constituting the statutory crime of robbery while armed, etc., are alleged with sufficient certainty in the information to fully advise defendant of the charge against him and to support the verdict. The defect in form complained of neither prejudices the substantial rights of defendant nor renders the information invalid.

For those reasons the judgment is affirmed.

WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE and FELLOWS, JJ., did not sit.