Kelly, J.
(dissenting). We granted oral argument on the application to consider the meaning of the “from the person” element of the larceny-from-the-person statute.[1] While I agree with the majority that the Legislature’s 2004 amendment of the robbery statute[2] did not alter the meaning of that phrase as it applies to larceny from the person, I disagree with the majority’s interpretation of that phrase to mean “immediate presence,” such that there is no “space intervening” between the victim and the object taken. In adopting this new definition of “from the person,” the majority today *694 recasts Michigan’s common-law history to support its narrow definition of “from the person” as requiring actual physical possession at the time of the taking and effectively transforms the crime of larceny from the person into either shoplifting or robbery. Because this has never been the law of this state, I respectfully dissent and would reinstate defendant’s conviction.
I. ANALYSIS
A. “FROM THE PERSON”
The phrase, “from the person,” has acquired a long-settled meaning in our common law, and we thus construe this language consistent with its common-law understanding.[3] In this regard I recognize, like the majority, that the origin of larceny from the person far predates Michigan’s statehood. As Sir William Blackstone recorded in 1771, the English common law distinguished between two types of larceny from the person: those accomplished by “privately stealing,” like pickpockets, and those accomplished “by open and violent assault,” the former of which constitutes larceny from the person and the latter of which is robbery.[4] These crimes at common law, then, shared identical elements, both requiring that the taking be “from the person,” except that robbery involved the additional element of fear and violence.[5]
*695 Contrary to the majority’s view then, the meaning of “from the person” in the English common law, did not “dependü on whether the crime at issue was robbery or larceny from the person.”[6] Rather, in regard to the “from the person” element, both crimes required that the property taken be taken from the person or in his presence; as such, it was not necessary that the property be attached to the person, only that it be under his personal protection and control.[7] Indeed, as Sir Edward Coke noted with respect to the phrase “from the person” — which Sir Coke expressly recognized was applicable to both robbery and larceny from the person— “that which is taken in his presence, is in law taken from his person.”[8]
*696 Michigan’s first larceny-from-the-person statute was enacted in 1838, one year after Michigan became a state, and incorporated the common-law phrase “from the person.”[9] In the same tradition as the English common law, the Michigan Legislature has adopted statutes in which offenders are punished more harshly for larceny from the person than simple larceny, based on the recognition that stealing from a person’s presence “involves a substantial risk of physical force . . . .”[10] In 1931, the larceny-from-the-person statute was recodified as part of the Penal Code, and since then, continues to incorporate the common-law phrase “from the person.” That the Legislature has never altered the language “from the person” in the larceny-from-the-person statute, indicates that we should interpret that phrase consistent with the common-law rule at the time of enactment in 1838. Mainly, that “from the person,” as understood in the context of both larceny from the person and robbery, must be interpreted as property that is taken from the person’s “immediate presence,” which is property that was taken while under the person’s personal protection and control.
*697 In recognition that “from the person” is a common-law phrase, our jurisprudence has long-adhered to the phrase’s common-law meaning. Over nine decades ago, in People v Covelesky,[11] this Court acknowledged that the phrase “from the person” must be interpreted as having the same meaning that those terms acquired at common law at the time that the statute was enacted.[12] This Court construed the meaning of “from the person” consistent with the common law to mean property that is “taken ‘in the owner’s presence.’ ”[13] The Court then expounded on the meaning of “presence,” explaining that “presence” does not necessarily contemplate that the property be “ ‘in actual contact with the person of the one from whom it is taken,’ ” but that the element is satisfied if the property taken is property that is under the person’s “ ‘personal protection and control.’ ”[14] The Court explained that “personal protection,” in turn, extends to “cover all one’s effects within a not easily defined distance over which his presence *698 may be deemed to have sway . . . .”[15] As examples, the Court indicated a taking “from the person” may occur when the defendant, by causing fear or through violence, separates a person from the immediate presence of their property, and then takes the property from another room or even from another building.[16]
Following this Court’s decision in Covelesky, this Court affirmed the common-law meaning of “from the person” nearly ten years later in People v Cabassa.[17] There, the defendant robbed a gas station of which the victim was the attendant. The Court explained that the defendant took property “from the person” because the attendant, although not the actual owner of the property stolen, was in actual possession and control of the money taken.[18] In so holding, the Court again endorsed the view that “if [an object, due to the defendant’s acts of violence or putting in fear,] be away from the owner, yet under his control, in another room of the house... it is nevertheless in his personal possession; and, if he is deprived thereof, it may well be said it is taken from his person.”[19]
*699 This Court quoted this same language more recently in People v Gould, where we upheld the defendant’s conviction for larceny from the person where he took money from a restaurant’s cash register and cigar box after “forc[ing] the waitress and her sole customer to lie face down on the floor of another room....”[20] We held that the money was “in the possession and immediate presence of the waitress and customer....”[21] In so holding, the Court rejected the argument that a defendant must take the property from its actual owner, explaining that it is sufficient for larceny from the person that “ ‘ “the property be taken from the presence of the victim .. . [that is,] within his area of control.” ’ ”[22]
Five years after Gould, in People v Chamblis, this Court reaffirmed its commitment to “the view that the crime of larceny from the person embraces the taking of the property in the possession and immediate presence of the victim.”[23] And, nearly fifteen years after Chamblis, in People v Beach, the Court again reaffirmed that “the crime of larceny from the person embraces the taking of property in the possession and immediate presence of the victim.”[24] Thus, in an unbroken chain of caselaw dating back nearly a hundred years, this Court has continually interpreted the phrase “from the person” to mean from a person’s “immediate presence” and, consistent with this common-law meaning, has defined the scope of “immedi *700 ate presence” to extend beyond a person’s physical reach. Given these precedents, “immediate presence,” as that phrase has been consistently interpreted in our jurisprudence, plainly includes property that is taken while under the person’s personal protection and control.
I would therefore reverse the Court of Appeals’ holding that “from the person” means that property must be taken from the victim’s “personal space.” The Court of Appeals’ interpretation, which essentially ignores the common-law meaning of “from the person,” appears motivated by a concern that the threat of violence inherent in the crime of larceny from the person is absent if the taking does not occur within the victim’s “personal space.”[25] This policy concern is unfounded: The common-law meaning of “from the person” accounts for the reality that property taken from a person’s immediate presence may pose as great (or greater) a threat to the victim’s personal safety, as the threat created by a taking that occurs within arm’s reach. As this Court explained in People v Perkins, because “[i]n order to commit a larceny from the person, the defendant must steal something from a person in that person’s presence,” and, thus, “[ujnless the victim submits to the theft or does not notice the theft, physical force will almost certainly be used in response,” “larceny from the person is a crime that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.”[26] Accordingly, *701 it follows that the focus of whether property is taken from a person’s immediate presence and is under his personal protection and control is on whether, at the time the taking occurs, the proximity between the defendant and the victim triggers a substantial risk that a violent altercation will occur.[27]1 would therefore hold that “from the person” for purposes of the larceny-from-the-person statute means property taken in the person’s immediate presence, which includes property that is under the person’s personal protection and control such that a taking of such property triggers a substantial risk that a violent altercation will occur.[28]
B. THE MAJORITY’S NEW "IMMEDIATE PRESENCE” STANDARD
Notwithstanding this Court’s long-standing adherence to the common-law meaning of “from the person,” the majority narrowly defines this phrase to require *702 that the taking occur within the victim’s “immediate proximity,” meaning that there can be no “intervening space” between the victim and the property taken.[29] In fact, according to the majority, only in the rare instance that property is taken by “use of force or threats of force to create distance between a victim and the victim’s property” might property that is otherwise not affixed to the victim constitute a taking “from the person.” This interpretation, however, inexplicably departs from this Court’s jurisprudence, which holds that “immediate presence” “coverts] all one’s effects within a not easily defined distance over which his presence may be deemed to have sway.”[30] Indeed, this Court has never *703 held that an object must be, as the majority holds, “immediately next to the person” or effectively in the victim’s actual physical possession in order for the taking to be in the person’s “immediate presence.” Thus, by adopting an interpretation that is incompatible with the well-established meaning of “immediate presence” as recognized in this state for nearly a century, the majority has created a “new test” that represents a sea change in Michigan’s common law.
Despite adopting an immediate-presence standard that represents a vast departure from Michigan jurisprudence, the majority avoids overruling even a single case of this Court. Yet, the majority does not explain how it is able to do so where its holding conflicts with (1) all of our cases that have held that the Legislature codified the common-law understanding of the language “from the person” when it incorporated this language into the robbery and larceny-from-the-person *704 statutes;[31] (2) all of our robbery cases that have held that “from the person” includes from the person’s “immediate presence;”[32] (3) all of our larceny-from-the-person cases that have held that “from the person” includes from the person’s “immediate presence;”[33] and (4) all of our cases that have held that larceny from a person was a necessarily included lesser offense of robbery (at least before 2004).[34]
Indeed, the majority reforms this state’s common-law history, as well as English common law as previ *705 ously explained in this dissent. In particular, the majority ignores the significance of the historical relationship between larceny from the person and robbery and the fact that our jurisprudence has consistently recognized that larceny from the person constitutes a necessarily included lesser offense of robbery.[35] It follows, then, that all of the elements of robbery and larceny from the person are exactly the same, including “from the person,” except for the additional element of force or violence inherent only in the crime of robbery. The majority, however, has interpreted “from the person” to mean something entirely different from how this phrase was understood in the context of robbery before the 2004 amendments to the robbery statute, thereby retroactively transforming larceny from the person into a cognate offense, rather than a lesser included one.[36]
Next, the majority invents a tension in the evolution of the meaning of “immediate presence,” indicating that Michigan law once required actual physical possession, not merely immediate presence, to establish the *706 from-the-person element for larceny from the person.[37] The majority uses this supposed conflict in our caselaw to justify its departure from the unabated meaning of “immediate presence.” However, the conflict referenced by the majority simply does not exist. For example, the majority infers from the facts in People v Godson,[38] that our jurisprudence once interpreted “immediate presence” to require that the property be physically attached to the person. Gadson, however, provides no analysis regarding the meaning of “from the person,” but simply held that larceny from the person was not established where the evidence was insufficient to prove that a theft occurred in the first instance. There is no other case from this Court that adopts a standard other than the common-law one articulated in part A of this dissent.[39]
In a similar manner, the majority recharacterizes People v Gould as creating a previously unrecognized “constructive presence” exception to its immediate-presence standard. Under this alleged exception, property that is not attached to the victim at the time of the taking will be deemed to have been taken “from the person,” if the victim could have retained possession of the property but for the defendant’s use of force or intimidation to separate the victim from his property. *707 The majority premises the creation of this exception, in part, on the idea that a defendant may not negate the from-the-person element for purposes of establishing robbery by using force or intimidation to prevent the victim from retaining possession of his property. Although such a principle itself is not objectionable, a fair reading of Gould indicates that it in no way stands for that principle nor did it articulate, let alone adopt, the majority’s new “constructive presence” exception. Rather, as previously explained, Gould held that the taking of property in the victims’ immediate presence and within their area of protection and control was sufficient to sustain a conviction of larceny from the person, notwithstanding that the victims were not in actual physical possession of the property at the time of the taking.[40]
Perhaps even more concerning is the result of the majority’s new “immediate presence” standard, in the context of takings from a retail establishment. By holding that there can be no “intervening space” between the victim and the property taken unless its “constructive presence” exception applies, the majority essentially eviscerates the offense of larceny from the person in all instances not involving a taking where the property is physically attached to the victim. That is, if, in the absence of actual physical possession, larceny *708 from the person can only be established when the “constructive presence” exception applies, then the actual offense committed would be robbery because the offense would necessarily involve force or intimidation. Comparatively, if, in the absence of force or intimidation, larceny from the person can only be established when property is attached to the victim at the time of the taking, then the absence of property physically attached to the victim places the crime within the definition of retail fraud.[41] Under the majority’s standard, then, the prosecutor’s discretion to pursue a charge of larceny from the person in the context of a taking from a retail establishment is limited to those very rare instances in which the defendant is actually a pickpocket.
In summary, the majority’s new immediate-presence standard overrules nearly one hundred years of this Court’s jurisprudence, without any mention of stare decisis, recasts the historical understanding of “from the person” in both Michigan’s and England’s common law, and unduly narrows the crime of larceny from the person such that, effectively, it is conflated with either shoplifting or robbery. I would instead adhere to this Court’s long-standing recognition of that phrase which, consistent with its meaning at common law, includes the taking of objects that are within a person’s immediate presence and under that person’s personal protection and control.
*709 C. APPLICATION
Application of the unabated meaning of “from the person” to the facts of this case, leads to the conclusion that the evidence was sufficient to support defendant’s conviction. Macy’s loss-prevention officer Krumbhaar testified that defendant, after trying on a pair of shoes, completed the larceny by pushing the gift box into her grocery bag. At that time, Krumbhaar observed the taking from a distance close enough to hear defendant interact with a sales associate. As an employee of Macy’s responsible for preventing thefts of Macy’s store items, Krumbhaar had personal protection and rightful control over the gift box at the time of taking.[42] Taking these facts in a light most favorable to the prosecution, a reasonable jury could conclude beyond a reasonable doubt that defendant unlawfully took the gift box from Krumbhaar’s immediate presence. Krumbhaar’s testimony that defendant was within her “visual range” and was “fairly close,” is sufficient to satisfy the meaning of “from the person,” contrary to defendant’s argument. Rather, as previously explained, “from the person” *710 includes the taking of objects that are within a person’s immediate presence and under that person’s personal protection and control such that a risk of a physical altercation exists, as in the instant case. I would therefore conclude that the evidence was sufficient to support the jury’s finding that the gift box was taken “from the person of another.”
To reach this conclusion, and affirm this Court’s adherence to the common-law meaning of “from the person,” is not to say that all shopliftings constitute larceny from the person. Indeed, there are multiple scenarios where a defendant who is caught shoplifting is guilty of only retail fraud or simple larceny rather than larceny from the person. Á few non-exhaustive examples of such instances include (1) a defendant who completes the larceny without being seen; (2) a defendant who completes the larceny while a security guard observes via closed-circuit monitor; (3) a defendant who is stopped by a security guard because of a suspicious bulge in the defendant’s clothing or other suspicious behavior following the completed larceny; or (4) the defendant triggers the store’s security alarm after the completed larceny and is stopped by a security guard.[43] While defendant suggests that she could, at most, be guilty of third-degree retail fraud, it is clear that none of these scenarios existed and the evidence, in my view, supports a jury finding that defendant took the gift box from Krumbhaar’s person.[44]
*711 IV CONCLUSION
The majority’s new rule deviates from the historical meaning of “from the person” as it has been understood in this Court’s jurisprudence. By defining “immediate presence” to require that there be no “intervening space” between the person and object taken, the majority has effectively ruled that the property must be attached to the person. This Court, however, has never, until today, held that immediate presence requires that the victim have actual physical possession of the property at the time of the taking.
I would adhere to this Court’s well-established jurisprudence and hold that “from the person” for purposes of the larceny-from-the-person statute means property that is taken from a person’s “immediate presence,” which includes property that is under the person’s personal protection and control such that a taking of such property triggers a substantial risk that a violent altercation will occur. Applying the legally correct understanding of the larceny-from-the-person statute, and considering the evidence in a light most favorable to the prosecution, the evidence was clearly sufficient to support defendant’s conviction. I would therefore reverse the judgment of the *712 Court of Appeals and reinstate defendant’s conviction for larceny from the person.
Markman and Zahra, JJ., concurred with Kelly, J.

 MCL 750.357.

 See MCL 730.530, as amended by 2004 PA 128.

 MCL 8.3a; Const 1963, art 3, § 7 (“The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.”).

 4 Blackstone, Commentaries on the Laws of England, p *241.

 As Sir Edwardo Coke recognized, the crimes were exactly the same except for the element of fear specific only to robbery. 3 Coke, The Third Part of the Institutes of the Laws of England (1797), p 68 (“By putting him in fear ... this circumstance maketh the difference between a robber *695 and cutpurse: both take it from the person, but this takes it [secretly and privately], without assault or putting in fear, and the robber by violent assault, and putting in fear.). See 4 Blackstone, at **242-243 (describing the additional element of fear or violence inherent in the crime of robbery as “the criterion that distinguishes robbery from other larcenies” and noting that if the taking is not “from his person or in his presence” there is no robbery).

 For this proposition, the majority appears to rely primarily on the statutory offense of larceny from the person that applied to pickpocketing and required that the property be attached to the person. See 8 Eliz, c 4, § 2 (1565). The majority assigns too much significance to this point of statutory law, as it does not inform the meaning of “from the person” at common law.

 As an example of a taking from “the person of another or in his presence,” Blackstone referenced a man who “drives away [another person’s] sheep or his cattle ... ,” which are clearly not attached to the person, but under his personal protection and control. 4 Blackstone at *243.

 3 Coke at 69. Modern legal commenters are in agreement that, traditionally, the phrase “from the person of another” includes a taking of property from the person’s presence, which is a taking that occurs where the property is under the person’s personal protection and control at the time of the taking. See Perkins & Boyce, Criminal Law (3d ed), p 342 (“Property is stolen ‘from the person,’ if it was under the protection of the person at the time.”); 4 Torcía, Wharton’s Criminal Law (15th ed), § 458, p 15 (“[P]roperty is deemed to be within a victim’s ‘presence’ when *696 it is within his control.”); 3A Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1804, p 471 (“[T]he statute defining the crime of larceny from a person protect[s] the person or immediate presence of the victim from invasion____”).

 The first version of the larceny-from-the-person statute is nearly identical to the current statute. It provided:
Every person who shall commit the offence of larceny, by stealing from the person of another, shall be punished by imprisonment in the state prison not more than five years, or in the county jail not more than one year. [1838 RS, part 4, tit I, ch 4, §16.]

 See People v Perkins, 473 Mich 626, 634; 703 NW2d 448 (2005) (explaining why the Legislature has chosen to subject a defendant who steals from the person of another to greater penalties than those imposed on a defendant who steals property outside a person’s presence).

 People v Covelesky, 217 Mich 90, 97-98; 185 NW 770 (1921), superseded by statute as recognized by People v Williams, 491 Mich 164, 171-173; 814 NW2d 270 (2012). Although Covelesky was decided 10 years before the 1931 codification of the larceny-of-the-person statute, its discussion is relevant because, as explained, the Legislature has never departed from the phrase “from the person” in the larceny-from-the-person statute.

 Covelesky, 217 Mich at 97-98. Covelesky discussed the meaning of “from the person” in the context of a robbery charge. As explained, “from the person” was formerly an element of both robbery and larceny from the person and because the element has historically meant the same thing for both crimes the caselaw discussing “from the person” in the context of robbery is informative.

 Id,., quoting 34 Cyclopedia of Law & Procedure, p 1798.

 Covelesky, 217 Mich at 97, quoting 23 R C L, pp 1142-1143. Implicit in the notion that the property only need be within the person’s personal protection or control is the principle that the person from whom the property is taken need not be the actual owner of the property; rather, it suffices if the property is merely under the person’s possession or control. See Durand v People, 47 Mich 332, 334; 11 NW 184 (1882) (“Neither is it necessary that the person assaulted must have been the actual owner of *698 the property intended to be taken. As against a wrong-doer, an actual possession or custody of the goods would be sufficient.”).

 Covelesky, 217 Mich at 98, quoting 2 Bishop’s New Crim Law (8th ed), §§ 1177-1178, p 677.

 Id. at 98-99. Therein, we quoted two examples from 2 Bishop’s New Crim Law at §§ 1177-1178, which indicate that a taking from another room or building satisfies the “from the person” requirement where the defendant is the cause of the person being in the other room or building:
5. One who binds another in one room of his house, and compels him to tell where valuables may be found in another room; or confines another in his smokehouse fifteen steps from the dwelling house, commits robbery by feloniously taking the sought-for things from the other room or building. [Covelesky, 217 Mich at 98.]

 People v Cabassa, 249 Mich 543; 229 NW 442 (1930).

 Id. at 546-547.

 Id. at 547, quoting State v Calhoun, 72 Iowa 432; 34 NW 194 (1887) (quotation marks omitted; emphasis added).

 People v Gould, 384 Mich 71, 74, 80; 179 NW2d 617 (1970).

 Id. at 80.

 Id., quoting Commonwealth v Subilosky, 352 Mass 153, 166; 224 NE2d 197 (1967), in turn quoting Anderson, Wharton’s Criminal Law & Procedure, § 553.

 People v Chamblis, 395 Mich 408, 425; 236 NW2d 473 (1975), overruled in part on other grounds People v Cornell, 466 Mich 335, 357; 646 NW2d 127 (2002).

 People v Beach, 429 Mich 450, 484 n 17; 418 NW2d 861 (1988) (quotation marks and citation omitted).

 The Court of Appeals, People v Smith-Anthony, 296 Mich App 413, 418; 821 NW2d 172 (2012), cites People v Perkins, 262 Mich App 267, 272; 686 NW2d 237 (2004), affd 473 Mich 626 (2005), in support of its view, but Perkins does not support the proposition that the increased risk of violence is only activated when a defendant takes the property from the victim’s “personal space.”

 Perkins, 473 Mich at 632-633 (quotation marks and citation omitted).

 The analysis in this regard is not on the victim’s conduct, i.e., whether or at what point the victim may choose to confront the thief, hut simply on whether the taking occurs within a proximity that poses a substantial risk of physical altercation. While this distance cannot be defined with specificity and is dependent on the facts of each particular case, it is clear that no such risk of violence exits when a thief steals from a victim who observes the taking from a safe distance that presents no opportunity to retake the property. Accordingly, that a victim could, according to the majority, “plausibly observe a thief from 100 feet away, and yet still have a chance of catching up to and confronting the thief if the victim chose to do so,” ante, at 692, unnecessarily fixates on the victim’s conduct. Nor does this analysis place “difficult to discern” and “arbitrary” limitations on determining whether a taking occurs within a proximity that poses the risk of physical altercation; rather, the determinant of such proximity is simply common sense and what is objectively reasonable under the circumstances. For example, it is implausible that a taking, which occurs ten car lengths (approximately 100 feet) from the victim, could trigger a substantial risk that a violent altercation will occur.

 Contrary to the majority’s assertion, this interpretation does not create an expansive “new test” for determining whether a taking occurs in the victim’s immediate presence, but is plainly supported by over nine decades of our jurisprudence.

 In concluding that “immediate presence” is established only if property is taken “immediate[ly]” from the victim’s person, the majority relies exclusively on the term “immediate” while completely ignoring the term “presence,” essentially equating “immediate presence” with “attached to the person.” As support for its new “immediate presence” standard, the majority relies on the common dictionary definition of the term “immediate.” However, as acknowledged by the majority, “immediate presence” is a “technical phrase” that has “acquired a peculiar and appropriate meaning in the law,” and thus “shall be construed and understood according to such peculiar and appropriate meaning.” MCL 8.3a; see also Const 1963, art 3, § 7. Consequently, it is not appropriate for the majority to consult a lay dictionary in its attempt to define this phrase.
Notwithstanding its reliance on common dictionary definitions, the majority asserts that it is “not true” that it has equated immediate presence with physical possession because under its standard, property taken either “from the physical person or immediate presence of a victim” is sufficient. Ante, at 688-689 n 60. However, there is no meaningful distinction between these two circumstances given that, under the majority’s interpretation, the latter requires that there be no “intervening space” between the victim and the object, or that the object he physically “next” or “nearest” to the victim. In essence, then, to satisfy “immediate presence” under the majority’s standard requires that, at the time of the taking, the properly be physically touching, or otherwise physically next to, the victim without any intervening space, i.e., actual physical possession.

 Covelesky, 217 Mich at 98 (citation and quotation marks omitted). Because this Court’s jurisprudence does not support the majority’s *703 interpretation of “from the person” to require that the property be “immediately next to the person at the time of the taking,” the majority relies on caselaw from other jurisdictions, the factual circumstances of which (not surprisingly) support the majority’s purported measure of immediate proximity, which necessarily requires that the property be attached to the victim’s person. While the manner in which other states have construed their respective larceny-from-the-person statutes is entirely inapposite, I would be remiss not to note that multiple cases from other jurisdictions are also consistent with my interpretation of “from the person.” See State v Calhoun, 72 Iowa 432; 34 NW 194, 196 (1887) (holding that “[i]f [property] be away from the owner, yet under his control, in another room of the house ... it is nevertheless in his personal possession; and, if he is deprived thereof, it may well be said it is taken from his person.”); State v Jones, 499 SW2d 236, 237-240 (Mo Ct App, 1973) (the defendant, who reached through the open passenger-side window and took the victim’s purse off of the passenger seat as the victim was exiting her vehicle on the driver’s side, was found to have taken property “from the person.”); and In re Welfare of DDS, 396 NW2d 831 (Minn, 1986) (a radio that was not actually on the person of another but only in that person’s presence was held to have been taken “from the person.”). See also Subilosky, 352 Mass at 166.

 See, e.g., Covelesky, 217 Mich at 98-99 (“The words ‘from the person of another,’ found in our statutory definition of robbery, must be held to have been used in the same sense and with the same meaning that these terms had acquired at common law at the time the statute was enacted, and the offense of robbery under the statute may be committed by violence or putting in fear, and feloniously taking money or other things of value from the person or in the presence and under the immediate control and possession of the person assaulted.”) (quotation marks and citation omitted).

 See, e.g., Covelesky, 217 Mich at 97 (“To constitute robbery, it is essential that there be a taking from the person. To satisfy this requirement, it is sufficient that property be taken in the owner’s presence.”) (quotation marks and citation omitted); Cabassa, 249 Mich 543.

 See, e.g., Gould, 384 Mich at 80 (“We hold that the taking of property in the possession and immediate presence of the waitress and customer in this case was sufficient to sustain a verdict against defendant Gould of larceny from the person.”); Chamblis, 395 Mich at 425 (“We are committed to the view that the crime of larceny from the person embraces the taking of property in the possession and immediate presence of the victim.”); Beach, 429 Mich at 485 (same); Perkins, 473 Mich at 633 (“In order to commit a larceny from the person, the defendant must steal something from a person in that person’s presence.”).

 See, e.g., People v Calvin, 60 Mich 113, 121; 26 NW 851 (1886) (“Each of these offences under our statutes and at common law, to-wit, robbery and larceny from the person, include the stealing and taking of property from the person,-one by force and violence; the other need not be with force or violence; it may be by stealth.”); Chamblis, 395 Mich at 424 (“Larceny from the person is ‘robbery’ absent the element of force”) (emphasis in the original.); Beach, 429 Mich at 484 n 17 (“Robbery is committed only when there is larceny from the person, with the additional element of violence or intimidation”) (quotation marks and citation omitted.).

 See, e.g., Calvin, 60 Mich 113; Chamblis, 395 Mich 408; Beach, 429 Mich 450. See also Perkins, Criminal Law (2d ed), pp 279, 281.

 The majority makes the pronouncement, in dicta, that as a result of the 2004 amendment of the robbery statute, larceny from the person “is no longer a necessarily included lesser offense of robbery.” Ante, at 687 n 53. However, this issue has never been litigated in this Court. Furthermore, defendant has waived the issue whether larceny from the person remains a lesser included offense of robbery in light of the 2004 amendment because defendant requested an instruction on larceny from the person as a lesser included offense of robbery and did not raise the issue on appeal. See People v Kowalski, 489 Mich 488, 504-505; 803 NW2d 200 (2011) (indicating that counsel’s express approval of the instructions constitutes a waiver of any instructional error). In any event, the meaning of “from the person” is unaffected by the 2004 amendment of the robbery statute, given that the majority agrees that the amendment had no effect on the meaning of “from the person” in the larceny-from-the-person context.

 This assertion is not, as the majority seems to suggest, dependent on this Court’s decision in Covelesky, but is simply consistent with the meaning of “from the person” as that phrase was interpreted at common law. Again, this Court’s caselaw does not support the majority’s supposition that Michigan ever adopted the minority view and required an actual taking from the physical person of the victim. The authorities cited by the majority actually support this point.

 People v Gadson, 348 Mich 307; 83 NW2d 227 (1957)

 The majority’s reliance on two Court of Appeals cases, People v Stevens, 9 Mich App 531; 157 NW2d 495 (1968), and People v Johnson, 25 Mich App 258; 181 NW2d 425 (2005), is also not persuasive because we are not bound by these lower court decisions.

 The majority “believe[s] that Gould should [not] be read as a wholesale importation of robbery doctrine into larceny-from-the-person law” and that the standard articulated in this dissent “expands the prohibited taking zone . .. well beyond the standard in Gould.” Ante, at 685 n 47. The majority’s belief, however, is premised on its use of the phrase “from the person” as having one meaning in the context of robbery and having another different meaning in the context of larceny from the person, which, of course, is unsupportable under our law. Moreover, the majority does not explain how this dissent’s interpretation of “from the person” expands the “taking zone” beyond that recognized at common law.

 See MCL 750.356c and MCL 750.356d. The majority concedes that Michigan is an “immediate presence” jurisdiction rather than one that requires the victim to have actual physical possession of the property taken. Notwithstanding this concession, in adopting the constructive-presence exception the majority has transformed larceny from the person into a crime that can only be committed when the victim has actual physical possession of the property taken.

 The majority concludes that for Krumbhaar to establish personal protection over the gift box, “she would have had to have taken possession of [it] before defendant pilfered it.” However, actual possession, although sufficient, has never been required in our jurisprudence. See People v Randolph, 466 Mich 532, 556; 648 NW2d 164 (2002) (Markman, J., dissenting), superseded by statute as recognized by Williams, 491 Mich at 171-173 (“[Although [the] defendant had initially seized items from the shelf of the Meijer store, the security guards continued to exercise protective custody and control over that property, because they continued to monitor [the] defendant and they still had the right to take the property back. Therefore, the property was ‘in [their] presence’ within the meaning of MCL 750.530 when [the] defendant, by assault, attempted to unlawfully deprive the security guards of the property.”). The majority in Randolph in no way disagreed with Justice Markman’s conclusion that the property was taken “in the presence” of the security guards, even though they did not actually possess the property before it was taken.

 Given this guidance, it is simply untrue that “most routine shoplifting incidents could be charged as larcenies from the person.’’Ante, at 692. While the majority believes that these examples “fail to satisfy thfis] dissent’s own test,” based on its speculation that a risk of altercation “would still” arise where a security guard observes a theft via closed-circuit monitor, the majority again misapprehends the focus of our analysis by wrongly concerning itself with the victim’s conduct. Ante, at 692 n 69.

 Defendant also argues that the evidence only supports a conviction for third-degree retail fraud because Macy’s, and not Krumbhaar, *711 owned the gift box and suggests that she was mischarged. However, as previously explained, “from the person of another” does not require a showing that the property was taken from the actual owner; the fact of custody and possession is enough. Durand, 47 Mich at 334; Cabassa, 249 Mich at 546-547. Further, that the evidence may have supported a charge of third-degree retail fraud is irrelevant; just because the evidence may have supported that charge, as well as a charge for larceny from the person, does not mean that defendant cannot be convicted of the latter. The prosecutor has broad discretion in selecting the charges it pursues against a defendant, People v Venticinque, 459 Mich 90, 100; 586 NW2d 732 (1998), and, notably, it was defendant who requested an instruction on larceny from the person.