# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v SMITH-ANTHONY

Docket No. 145371. Argued April 17, 2013 (Calendar No. 8). Decided July 30, 2013.

Chandra Valencia Smith-Anthony was convicted by a jury in the Oakland Circuit Court, Michael D. Warren, Jr., J., of larceny from the person, MCL 750.357. While monitoring closed-circuit television monitors at a Macy's in Soutfield, Michigan, the store's loss-prevention officer observed defendant acting suspiciously while shopping and proceeded to follow her in person, keeping defendant within visual range. The loss-prevention officer saw defendant select a perfume box set from a display and later slip it into one of her bags. The officer kept her distance but was close enough to observe and sometimes hear defendant. Defendant was stopped by the officer when she left the store with the item in her bag. In a split opinion, the Court of Appeals, SHAPIRO, P.J., and GLEICHER, J., WHITBECK, J., dissenting, reversed defendant's conviction, concluding that the prosecution had failed to establish the from-the-person element of larceny from a person because there was no evidence that defendant had committed the larceny within the officer's area of immediate presence or control as required by the statute. 296 Mich App 413, 418-420 (2012). The Supreme Court granted the prosecution's application for leave to appeal. 493 Mich 879 (2012).

In an opinion by Justice VIVIANO, joined by Chief Justice YOUNG, and Justices CAVANAGH, and MCCORMACK, the Supreme Court *held*:

To be convicted of larceny from the person, MCL 750.357, a defendant must take property from the physical person or immediate presence of a victim. For purposes of the larceny-from-the-person statute, the from-the-person element is satisfied when a defendant takes property that is in the physical possession of a victim or property that is in immediate proximity to a victim when the taking occurs. Although only occurring rarely in larceny-from-the-person cases, the from-the-person element is also satisfied when the property is taken from the victim's constructive presence, which occurs when the defendant or the defendant's accomplice uses force to create distance between victims and their property. The 2004 amendment to the robbery statute, MCL 750.530, as amended by 2004 PA 128, which removed the phrase "from the person of another" from its language, did not alter the meaning of "from the person" in the larceny-from-the-person statute.

1. Under MCL 750.357, a person who commits a larceny by stealing from the person of another is guilty of larceny from the person. Common-law courts interpreted the phrase "from the person" differently in robbery and larceny-from-the-person cases; in the context of robbery,

common-law courts interpreted "from the person" to include takings from the victim's presence to account for the violence and intimidation that distinguishes robbery from larceny. Michigan courts originally recognized that to constitute larceny from the person, the property must have been taken from the physical person, a taking of property from the immediate presence of the owner was insufficient. This interpretation of "from the person" was later expanded to include the taking of property from the victim's immediate presence. Contrary to earlier Court of Appeals' decisions, the from-the-person element cannot be satisfied by a taking from a victim's immediate area of control absent the immediate presence of the victim, with the exception of when a defendant uses force to create distance between victims and their property. The common-law meaning of "immediate presence" in the larceny-from-the-person context is consistent with the plain meaning of the word "immediate," which means "having no object or space intervening, nearest or next." For purposes of the larceny-from-the-person statute, the from-the-person element is satisfied when a defendant takes property that is in the physical possession of a victim or property that is in immediate proximity to a victim when the taking occurs. Although only occurring rarely in larceny-from-the-person cases, the from-the-person element is also satisfied when the property is taken from the victim's constructive presence, which occurs when the defendant or the defendant's accomplice uses force to create distance between victims and their property.

2. The 2004 amendment to Michigan's robbery statute, which removed the phrase "from the person of another" from its language, did not alter the established meaning of "from the person" in the larceny-from-the-person statute.

3. In this case, the Court of Appeals properly reversed defendant's conviction because there was insufficient evidence to support it. There was no evidence that defendant took property that was in the physical possession of or immediate proximity to the loss-prevention officer and there was no evidence that defendant used force or threats to distance the loss-prevention officer from the property at the time of the taking.

Court of Appeals judgment affirmed.

Justice KELLY, joined by Justices MARKMAN and ZAHRA, dissenting, would have reversed the Court of Appeals and reinstated defendant's conviction. She agreed that the Legislature's 2004 amendment to the robbery statute did not alter the meaning of the phrase "from the person" as applied to the larceny-from-the-person statute but she disagreed with the majority's interpretation of the phrase "from the person" to mean property taken from the person's actual physical possession or from the person's "immediate proximity," which requires that, at the time of the taking, the property must be physically next to the victim without any intervening space. She believed that the majority's interpretation (1) departs from Michigan Supreme Court jurisprudence, which, consistent with the common-law understanding of the phrase "from the person," has never required that the property be physically next to the victim without any intervening space; (2) conflicts with Michigan Supreme Court jurisprudence recognizing that the Legislature codified the common-law understanding of the language "from the person" when it incorporated this language into the robbery and larceny-from-the-person statutes; (3) conflicts with Michigan Supreme Court jurisprudence recognizing that larceny from the person was a necessarily included lesser offense of robbery; (4) recasts English and Michigan

common-law history in support of its unduly narrow interpretation of the phrase "from the person;" and (5) in the context of takings from a retail establishment, effectively conflates the crime of larceny from the person with either retail fraud or robbery. Instead, Justice KELLY would have held that the phrase "from the person" must be interpreted as property that is taken from the person's "immediate presence," which is property that was taken while under the person's personal protection and control, such that a taking of such property triggers a substantial risk that a violent altercation will occur. She believed her interpretation to be consistent with the established common-law meaning of the phrase "from the person," which recognized that this phrase had the same meaning, as applied to both robbery and larceny-from-the-person cases.

©2013 State of Michigan

# Opinion

Chief Justice:        Justices:
Robert P. Young, Jr.  Michael F. Cavanagh
                      Stephen J. Markman
                      Mary Beth Kelly
                      Brian K. Zahra
                      Bridget M. McCormack
                      David F. Viviano

FILED JULY 30, 2013

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

No. 145371

CHANDRA VALENCIA SMITH-
ANTHONY,

       Defendant-Appellee.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

In this case, we consider the meaning of the phrase "from the person of another" under MCL 750.357, the larceny-from-the-person statute. Until 2004, Michigan's robbery statute contained this phrase as well, so we also consider whether the 2004 amendment that removed this phrase from the robbery statute[1] altered the meaning of "from the person" in the larceny-from-the-person statute.

---

[1] See MCL 750.530, as amended by 2004 PA 128.

We hold that Michigan law requires a defendant to take property from the physical person or immediate presence of a victim to commit a larceny from the person. In rare cases, a taking outside of a victim's immediate presence may satisfy the from-the-person element only if a defendant or the defendant's accomplices use force or threats to create distance between a victim and the victim's property. Because defendant in this case did not take property from the person or immediate presence of the victim, or use force or threats to separate a victim from the victim's property, we conclude that she did not commit a larceny from the person. Accordingly, we affirm the judgment of the Court of Appeals, which reversed her conviction of larceny from the person.

## I. FACTS AND PROCEDURAL HISTORY

On May 31, 2010, Khai Krumbhaar was working as a plain clothes loss-prevention officer at a Macy's in Southfield, Michigan. Through one of Macy's closed-circuit television monitors, Krumbhaar observed defendant carrying two bags, which she held "very, very closely." According to Krumbhaar, defendant "appeared extremely nervous" and was "darting her eyes" in the direction of sales associates and customers.

After watching defendant select a perfume set off a display case, Krumbhaar went to the sales floor to monitor her. Krumbhaar stayed far enough away to appear as if she were just another shopper, but stayed "fairly close" to defendant, at least close enough to observe her behavior. At times, she was within earshot of defendant. As Krumbhaar followed, she saw defendant "push[] the . . . [perfume] box down into her grocery bag." After this, Krumbhaar "stayed back giving [defendant] some space," until she saw

2

defendant "walking very quickly" out of the store into the main mall area.[2]  Outside the Macy's store, Krumbhaar confronted defendant, identified herself as a Macy's loss-prevention officer, and asked defendant about the perfume set.  Defendant began shouting and ran from Krumbhaar; Krumbhaar gave chase and captured defendant, who allegedly scratched and bit Krumbhaar as she tried to restrain defendant.

The prosecution charged defendant with unarmed robbery,[3] second-degree retail fraud,[4] and possession of marijuana.[5]  On the first day of trial, the prosecution dismissed the latter two charges, although defendant objected to the dismissal of the second-degree retail-fraud charge.[6]  The prosecution's only witness was Krumbhaar, who testified to the above facts.  After closing argument, and upon defendant's request, the circuit court instructed the jury on the elements of larceny from the person.[7]  The court explained that to find defendant guilty of larceny from the person, the jury would have to find that "property was taken from Khai Krumbhaar's *person* or from Khai Krumbhaar's

---

[2] At trial, Krumbhaar explained that Macy's policy prohibits its loss-prevention officers from confronting suspected shoplifters until after they have left the store.

[3] MCL 750.530.

[4] MCL 750.356d.

[5] MCL 333.7403(2)(d).

[6] Defendant argued that the retail-fraud charge was "more indicative of what happened on the date in question[.]"

[7] The circuit court instructed the jury on the elements of larceny from the person on the theory that this offense was a lesser included offense of robbery.  As we will explain below, the court erred by giving this instruction.

3

*immediate area of control or immediate presence*."[8]  After deliberating, the jury acquitted defendant of unarmed robbery, but found her guilty of larceny from the person.

On review, the Court of Appeals reversed defendant's conviction in a split published opinion.  The majority concluded that the prosecution presented no evidence that defendant had committed the larceny within Krumbhaar's "area of immediate presence or control."[9]  The court noted that Krumbhaar "never testified that she was even within arm's length of defendant"[10] or that "Krumbhaar was even close enough to defendant to have touched her or to have snatched the box from defendant's hands."[11]  Accordingly, the court held that the prosecution had failed to prove a larceny "from the person" of Krumbhaar because "[p]roof of 'stealing from the person of another' requires more than vague proximity between the victim and the perpetrator."[12]

Writing in dissent, Judge WHITBECK disagreed.  He believed that Krumbhaar's testimony that she was close enough to defendant to see her and hear her as she moved throughout the store was sufficient proof, as a matter of law, to establish that the taking occurred within her "immediate area of control or immediate presence."[13]

---

[8] (Emphasis added.)  This instruction was consistent with CJI2d 23.3, the model jury instruction for this offense.

[9] *People v Smith-Anthony*, 296 Mich App 413, 418; 821 NW2d 172 (2012).

[10] *Id*. at 419.

[11] *Id.* at 419 n 2.

[12] *Id.* at 420 (citation omitted).

[13] *Id*. at 432 (WHITBECK, J., dissenting).

4

We granted the prosecutor's application for leave to appeal, directing the parties to address:

> (1) whether the evidence was sufficient to prove beyond a reasonable doubt that the crime of larceny from a person, MCL 750.357, was committed within the "immediate area of control or immediate presence" of the loss prevention officer who witnessed the theft; (2) whether the 2004 amendment of the robbery statute, 2004 PA 128 (amending MCL 750.530), altered the definition of "presence" with respect to the larceny-from-the-person statute; and, if not (3) whether the common-law definition of the phrase "from the person" remains consistent with the common-law definition of "presence."[14]

## II.  STANDARD OF REVIEW

We review de novo questions of statutory interpretation.[15]  Our goal in interpreting a statute is to ascertain and "give effect to the intent of the Legislature."[16]  We enforce the clear and unambiguous language of the statute as written.[17]  To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt."[18]

---

[14] *People v Smith-Anthony*, 493 Mich 879 (2012).

[15] *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001).

[16] *Id.* at 562.

[17] *Id.*

[18] *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (citation and quotation omitted).

5

## III. ANALYSIS

### A. INTERPRETING "FROM THE PERSON"

Under MCL 750.357, a person who commits a larceny by stealing from "the person of another" is guilty of larceny from the person.[19] To determine whether there was sufficient evidence to establish this element, we must first determine the meaning of the statutory phrase "from the person." The Legislature has instructed that any "technical words and phrases" that "have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."[20] And in the criminal-law context, common-law doctrine informs the meaning of a statute when the Legislature uses common-law terms.[21] Because the phrase "from the person" has an extensive history at common law, we now turn to that history to determine if the phrase has acquired a "peculiar and appropriate meaning."

Common-law courts interpreted the phrase "from the person" differently in robbery cases and larceny-from-the-person cases. The first statute to separately criminalize larceny from the person was enacted in England in 1565.[22] The purpose of

---

[19] See MCL 750.357 ("Any person who shall commit the offense of larceny by stealing *from the person of another* shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years." [emphasis added]).

[20] MCL 8.3a; see also Const 1963, art 3, §7 ("The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.").

[21] See *People v McDonald*, 409 Mich 110, 117; 293 NW2d 588 (1980).

[22] Anno: *What Constitutes Larceny "From a Person*," 74 ALR3d 271, 276; 8 Eliz c 4, § 2 (1565).

6

this law was to punish pickpockets, so courts construed it narrowly, requiring that a thief steal an object attached to or physically possessed by the victim to satisfy the "from the person" element of larceny from the person.[23] At the same time, jurists interpreted the phrase "from the person" more broadly in robbery cases. In those cases, courts interpreted "from the person" differently to account for circumstances in which robbers used force or threats of force in the commission of a theft. As Professor Rollin Perkins has explained, "One of the illustrations of robbery, given by the early writers, is the wrongful driving off of another's horse or sheep while he, although present, is by violence or intimidation prevented from interfering."[24] Thus, in robbery cases, common-law courts and scholars interpreted "from the person" to include takings from a victim's presence to account for the violence and intimidation that distinguishes robbery from larceny. In the words of Sir Edward Coke, writing about the crime of robbery in the 1700s, "that which is taken in [someone's] presence, is in law taken from his person."[25] Hence, at common law, the meaning of "from the person" depended on whether the crime at issue was robbery or larceny from the person.[26]

---

[23] 74 ALR3d 271, 276-277.

[24] Perkins & Boyce, Criminal Law (3d ed, 1982), p 346, citing 3 Coke, The Third Part of the Institutes of the Laws of England (1797), p 68; 1 Hale, *The History of the Pleas of the Crowns*, p *533; 1 Hawkins, *A Treatise of Pleas of the Crown*, c 34, § 5 (6th ed).

[25] 3 Coke, p 69.

[26] We disagree with the premise of the third question on which we granted leave to appeal in this case. In the larceny-from-the-person context, the phrase "from the person" had a more restrictive meaning at common law than "presence."

There is a split of authority in American jurisdictions with regard to whether larceny from a person requires a taking directly from the body of the victim or merely from the victim's immediate presence. Some states followed the common-law approach to the offense of larceny from the person and required physical contact between the stolen object and the victim.[27] But this position is now a minority view. Courts in the majority of states that criminalize this offense have adopted the view that "from the person" includes the area within a victim's immediate presence.[28] Explaining the rationale for the evolution of the law in this area, the Supreme Court of Minnesota stated that the phrase "from the person" included the "immediate presence" of a victim because, in any taking from this area, "the rights of the person to inviolability would be encroached upon, and

---

[27] See, e.g., *People v McElroy*, 116 Cal 583, 586; 48 P 718 (1897) (holding that property "shall at the time [that it was taken] be in some way actually upon or attached to the person, or carried or held in actual physical possession"); *Terral v State*, 84 Nev 412, 413-414; 442 P2d 465 (1968) (citation omitted) (explaining that "from the beginning [larceny from the person] required 'an actual taking from the person; a taking from his presence was not sufficient as it was in robbery'"); *State v Lucero*, 28 Utah 2d 61, 63; 498 P2d 350 (1972) (following *Terral*); *Wilder v State*, 30 Ala App 107, 108; 1 So 2d 317 (1941) (following *McElroy*).

[28] See, e.g., *People v Pierce*, 226 Ill2d 470, 483; 877 NE2d 408 (2007) (recognizing the split of authority on this issue and adopting majority view); *State v Kobylasz*, 242 Iowa 1161, 1166-1168; 47 NW2d 167 (1951) (recognizing that some courts require that the property be "taken *off* the person," citing *McElroy* and *Wilder*, but declining to construe the larceny-from-the-person statute so narrowly and instead applying the immediate presence standard); *State v Jones*, 499 SW2d 236, 238-240 (Mo Ct App, 1973) (following *Kobylasz*); *Banks v State*, 74 Ga App 449, 451-452; 40 SE2d 103 (1946) (construing the phrase "from the person of another" as used in both the robbery and larceny-from-the-person statutes of that state and holding that "it is unnecessary that the taking of the property should be *directly* from one's person, but it is sufficient if it be taken while in his possession and immediate presence") (emphasis added) (quotation marks and citation omitted).

his personal security endangered, quite as much as if his watch or purse had been taken from his pocket."[29]

Prior to 1970, Michigan appears to have taken the minority view, requiring an actual taking from the physical person of the victim.[30] For example, in *People v Gadson*, this Court reviewed the sufficiency of the evidence for the from-the-person element in a larceny-from-the-person case.[31] At trial, there was evidence presented that the defendant had taken the victim's wallet, but it was unclear whether the defendant had taken the wallet directly out of the victim's pocket or after it had fallen out of his pocket during a scuffle. This Court held that there was insufficient evidence on the from-the-person element because there was reasonable doubt regarding whether the defendant took the wallet from the victim's pocket. We emphasized that "[u]nder [MCL 750.357], an essential element of the larceny charged in the instant case . . . is that it was accomplished by 'stealing from the person of another.'"[32] Although not stated explicitly, the facts of the case make it clear that "physical possession" was the governing standard in Michigan law.

---

[29] *State v Eno*, 8 Minn 220, 223 (1863).

[30] The dissent disagrees with this point and relies heavily on the case of *People v Covelesky*, 217 Mich 90; 185 NW 770 (1921), superseded by statute as recognized by *People v Williams*, 491 Mich 164, 171-173; 814 NW2d 270 (2012), to explain its interpretation of "from the person." It is worth noting that *Covelesky*, like most of the authority cited by the dissent, involved a robbery. Moreover, the facts of *Covelesky* are significantly different from the larceny-from-the-person cases discussed in this opinion because that case involved a home invasion with a high degree of violence.

[31] *People v Gadson*, 348 Mich 307, 309-310; 83 NW2d 227 (1957).

[32] *Id.*

Two subsequent Court of Appeals cases took the same approach as *Gadson* and applied the physical-possession standard to the crime of larceny from the person. In *People v Stevens*, the defendant and his accomplice were convicted of robbery after they took money from a safe and from under a desk while they held a storeowner at gunpoint.[33] On appeal, the defendant claimed that the trial court erred by not instructing the jury on the lesser-included offense of larceny from the person, but the Court of Appeals disagreed. The court stated that there was "no evidence" for that offense because the "taking was from the safe and from the under the desk; there was no taking *from the person of the victim*."[34] Similarly, in *People v Johnson*, the Court of Appeals reviewed a case in which the defendant stole property from a room in the victim's home while the victim was in the bathroom.[35] The court stated that this crime could not constitute a larceny from the person and openly rejected the immediate presence approach stating, "What is required is that the property in question actually be taken from the person of another; a taking of property from the immediate presence of the owner is insufficient."[36] Hence, before 1970, Michigan courts had consistently identified Michigan as a physical-possession state.[37]

---

[33] *People v Stevens*, 9 Mich App 531, 532; 157 NW2d 495 (1968).

[34] *Id.* at 534 (emphasis added).

[35] *People v Johnson*, 25 Mich App 258, 264; 181 NW2d 425 (1970).

[36] *Id.*

[37] We have found no other cases before this Court's opinion in *People v Gould*, 384 Mich 71, 80; 179 NW2d 617 (1970), that discuss the appropriate taking standard in the larceny-from-the-person context. There are cases in which Michigan courts have applied the larceny-from-the-person statute to situations in which the victim was in

10

However, in the 1970 case of *People v Gould*,[38] this Court adopted the immediate presence approach, holding that "the taking of property in the possession and immediate presence of the [victims] . . . was sufficient to sustain a verdict against defendant Gould of larceny from the person." Notably, this Court did not distinguish or overturn the physical-possession cases, nor did we address the text of Michigan's larceny-from-the-person statute. But *Gould*'s holding represented a decided shift to the majority, immediate presence view of larceny from the person. Since *Gould*, this Court has interpreted the phrase "from the person of another" to include takings from the possession and immediate presence of the victim.[39]

Despite this Court's consistent application of the immediate presence test since *Gould*, the Court of Appeals has expanded the definition of "from the person." For example, in *People v Perkins*, the court stated that the from-the-person element could be satisfied by a taking "from the person *or* from the person's immediate area of control *or*

---

physical possession of his or her property. See, e.g., *People v Tucker*, 222 Mich 564, 569; 193 NW 206 (1923); *People v Newsom*, 25 Mich App 371, 374; 181 NW2d 551 (1970). In contrast, we can find no Michigan cases applying the immediate presence standard in the larceny-from-the-person context—or even using the phrase—prior to the Court of Appeals opinion in *People v Gould*, 15 Mich App 83, 87; 166 NW2d 530 (1968), aff'd in part and rev'd in part 384 Mich 71 (1970), where it was used for the first time and rejected as the proper standard.

[38] *Gould*, 384 Mich at 80.

[39] See *People v Perkins*, 473 Mich 626, 633; 703 NW2d 448 (2005); *People v Beach*, 429 Mich 450, 484 n 17; 418 NW2d 861 (1988); *People v Chamblis*, 395 Mich 408, 425; 236 NW2d 473 (1975), overruled in part on other grounds *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002) (stating, in dicta, that "[w]e are committed to the view that . . . larceny from the person embraces the taking of property *in the possession and immediate presence* of the victim") (emphasis added).

11

immediate presence."[40]  However, the addition of "immediate area of control" as a independent category is an incorrect statement of the law and appears to stem solely from the model criminal jury instructions.[41]  The Court of Appeals' formulation erroneously suggests that the element can be satisfied by a taking from the victim's immediate area of control, regardless of whether the taking was from the victim's immediate presence.  This is an expansion of the law because we have always interpreted Michigan's larceny-from-the-person statute to require the actual presence of the victim at the time of the taking, absent circumstances in which defendants use force to create distance between victims and their property.  Because this expansion is not grounded in statute or the decisions of this Court, we repudiate it.  In keeping with this Court's precedent, we adhere to a more restrictive definition of "from the person" that requires the victim to be immediately present when the property is taken.[42]

In addition to declaring that Michigan is an immediate presence jurisdiction, *Gould* also applied a doctrine that had developed in robbery cases.  In this and many

---

[40] *People v Perkins*, 262 Mich App 267, 272; 686 NW2d 237 (2004), *aff'd* 473 Mich 626 (2005) (citing CJI2d 23.3 and *People v Wallace*, 173 Mich App 420, 426; 434 NW2d 422 (1988) in turn quoting CJI 23:2:01) (emphasis added).

[41] Beyond its citation to CJI2d 23.3, the Court of Appeals in *Perkins* cited to *Wallace*. However, *Wallace* provides no further guidance because it cites solely to CJI2d 23.3, which "do[es] not have the official sanction of this Court."  *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985).

[42] See *Perkins*, 473 Mich at 633 ("In order to commit a larceny from the person, the defendant must steal something from a person in that person's presence.");  *Gould*, 384 Mich at 80 ("[I]t is sufficient if the property be taken from the presence of the victim . . . [that is] within his area of control.") (Citations and quotation marks omitted).

other states, courts have had to address the recurring problem of robbers who claim that their convictions should be reversed due to a lack of proof on the from-the-person element, even though the robbers' own use of force or threats was what created distance between victims and their property. In such circumstances, courts in nearly every American jurisdiction have invoked the rule that robbery defendants cannot negate the from-the-person element of their crimes by using force or threats to remove victims or keep them away from their property.[43] Instead, courts treat victims as constructively present with the property, presuming that a victim would have retained possession of their property "if no[t] overcome by violence or prevented by fear, [from] retain[ing] his

---

[43] See, e.g., *United States v Kimble*, 178 F3d 1163, 1168 (CA 11, 1999) ("person or presence" standard in the federal carjacking statute, 18 USCA § 2119, deemed similar to standard for robbery, was met here, as had the car owner "not been in fear for his safety, he could have reached the car and prevented its taking"); *United States v Lake*, 150 F3d 269, 273 (CA 3, 1998) (rational jury could have found that the car was taken from the victim's presence where the victim "could have prevented the taking of her car if she had not been fearful that [the defendant] would shoot or otherwise harm her"); *People v Blake*, 144 Ill 2d 314, 320-321; 579 NE2d 861 (1991) (presence standard satisfied where the victims were immobilized on second floor of residence while property taken from first floor); *Commonwealth v Stewart*, 365 Mass 99, 108; 309 NE2d 470 (1974) (defendant properly convicted of robbing the victim by taking money from a safe where the victim could have prevented the taking if not intimidated by robber); *State v Calhoun*, 72 Iowa 432, 436; 34 NW 194 (1887) (affirming that "presence" standard was satisfied where the defendant took money and watch from the victim after binding victim in one room of her house and extorting from her the location of the money); *Towner v State*, 812 So2d 1109, 1113-1114 (Miss Ct App, 2002) ("presence" element satisfied where the defendant ordered two women, one employee and one co-owner, into restaurant's office at gunpoint and took money from the office, proximity and control existed as to each woman, and thus constituted two robberies); *Price v Commonwealth*, 59 Va App 764, 769-770; 722 SE2d 653 (2012) (concluding that "the items taken from [the victim's] purse located in another room of the trailer were close enough to her and sufficiently under her control that, had she not been subjected to violence and intimidation by the intruders, she could have attempted to prevent the taking of her personal items").

possession of it."[44]   For ease of reference, we will refer to this latter concept as "constructive presence."

In *Gould*, this Court applied the constructive-presence exception in a larceny-from-the-person case for the first time in Michigan.[45]   But a careful reading of the opinion shows that the court was applying this exception within its traditional limits, not expanding the meaning of "presence" for all larceny-from-the-person cases.   The prosecutor had charged all the defendants in *Gould* with robbery, and no one disputed that the defendants had used force and threats of force (one co-defendant brandished a gun) to move the victims away from the cash register.   The defendants forced a waitress to lie face-down on the floor in another room, making it impossible for her to be near the cash for which she was responsible.   Thus, even though this Court affirmed defendant Gould's conviction of larceny from the person, *Gould* is consistent with other precedent that prevented defendants from negating the from-the-person element of their crimes through the use of force.[46]

---

[44] *Commonwealth v Homer*, 235 Mass 526, 533; 127 NE 517 (1920).

[45] *Gould*, 384 Mich at 80.

[46] In *Gould*, this Court's holding has caused some confusion regarding its reach—perhaps best demonstrated by the fact that the dissent in this case and the Court of Appeals majority both believe it supports their view.   We take this opportunity to clarify its holding, for which the Court appears to have given alternative rationales.   To the extent the larceny supporting defendant Gould's conviction was the taking of money directly from the wallet of the customer present in the restaurant at the time of the holdup, there was an actual taking from the person.   On the other hand, to the extent the larceny was the taking of money from the cash register and cigar box, after the waitress was forcibly sequestered in another room, the constructive-presence exception was applicable.   We recognize that the former point could be interpreted as rendering the remainder of *Gould*

14

In summary, *Gould* established two principles of law within the larceny-from-the-person context. First, it established Michigan as an immediate presence jurisdiction. Second, it established that the constructive-presence exception from robbery cases could apply in larceny-from-the-person cases, provided there was evidence that the defendant or an accomplice had used force or threats of force to keep a victim away from his or her property.[47]

## B. THE EFFECT OF THE 2004 ROBBERY-STATUTE AMENDMENT

We next consider whether the 2004 amendments to Michigan's robbery statute had any effect on the meaning of "from the person" in the larceny-from-the-person context. We conclude that they did not.

Before 2004, the unarmed-robbery statute prohibited using force or violence to "steal and take *from the person of another*, or in his presence[.]"[48] The 2004 amendments removed the phrase "from the person of another" from the robbery statute. As amended, the statute now prohibits anyone who is "in the course of committing a

---

as dicta. However, even if dicta, its holding is now well settled, and its continued validity is not at issue.

[47] We do not believe that *Gould* should be read as a wholesale importation of robbery doctrine into larceny-from-the-person law, such that the presence element for each offense is coextensive. As noted, *Gould* applied the constructive-presence doctrine in the larceny-from-the-person context. Although it is not entirely clear how a doctrine that expands the prohibited taking zone when force or threats are present can logically be applied to a crime that does not require force or threats as an element, it is clear that *Gould* established the outer limit of the taking zone in larceny-from-the-person cases. However, the dissent's interpretation, which expands the prohibited taking zone even in the absence of force or threats, goes well beyond the standard in *Gould* or any other case.

[48] MCL 750.530, 1931 PA 328 (emphasis added).

15

larceny of any money or other property" from using "force or violence against *any person who is present*[.]"[49]

These changes were prompted by this Court's decision in *People v Randolph*, in which we considered whether Michigan's robbery statute permitted a transactional theory of robbery.[50] This approach allows a robbery conviction even where a defendant uses force for the first time after completing a taking, and we concluded that the robbery statute then in force did not permit this.[51] In response to our decision, however, the Legislature amended the robbery statute and codified the transactional theory.[52]

At issue in *Randolph* and the subsequent statutory changes was at what point in the commission of the crime force had to be used for a theft to constitute a robbery. The meaning of "from the person" in either robbery or larceny-from-the-person cases was not at issue in the exchange between the Legislature and this Court. Consequently, there is nothing to suggest that the Legislature intended to change the meaning of "from the person" in the larceny-from-the-person statute by removing this phrase from the robbery statute. We conclude, therefore, that "from the person" in the larceny-from-the-person statute has the same meaning now as it did before the 2004 amendments.[53] The

---

[49] MCL 750.530, as amended by 2004 PA 128 (emphasis added).

[50] *People v Randolph*, 466 Mich 532, 546; 648 NW2d 164 (2002), superseded by statute as recognized by *Williams*, 491 Mich at 171-173.

[51] *Id.*

[52] See *Williams*, 491 Mich at 184.

[53] However, the 2004 amendments have affected the *relationship between* robbery and larceny from the person. We have previously held that larceny from the person is a necessarily lesser included offense of robbery. *Beach*, 429 Mich at 484. "Necessarily

---

immediate presence test is still the governing standard in this area, and it is to the meaning of "immediate presence" that we now turn.

## C.  THE MEANING OF "IMMEDIATE PRESENCE"

Perhaps because Michigan was not an immediate presence jurisdiction until *Gould*, there is scant caselaw explaining the scope of the immediate presence standard. However, this standard has been the subject of legal commentary, and courts in many other states have applied the same standard in deciding their own larceny-from-the-person cases.  Courts and commentators alike have emphasized that this standard requires *immediate* proximity between the object and the victim.  As Professor Perkins has explained, "[I]f a man carrying a heavy suitcase sets it down for a moment to rest, and *remains right there* to guard it, the suitcase remains under the protection of his person."[54] Even objects that are relatively close to a person are not considered to be in the person's immediate presence unless they are *immediately* next to the person.  Hence, the North Carolina Supreme Court ruled that there was no larceny from the person where a thief stole a bank bag from a kiosk while the bank teller was 25 to 35 feet away.[55]  Likewise, the Colorado Court of Appeals concluded that a person could not be convicted of larceny

included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense."  *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004).  Under MCL 750.530(2), a defendant who uses force in fleeing a larceny is guilty of robbery.  Therefore, robbery does not require that the taking have been made in the "immediate presence" of the victim.  As a result, larceny-from-the-person is no longer a necessarily included lesser offense of robbery.

[54] Perkins & Boyce, p 342 (emphasis added).

[55] *State v Barnes*, 345 NC 146, 150-151; 478 SE2d 188 (1996).

17

from the person after taking a purse out of a shopping cart because the victim was not actually holding or pushing the cart at the time of the taking.[56]  In contrast, a defendant was properly convicted of larceny from the person in Virginia when he stood two feet away from a store employee but reached within inches of the victim to take cash out of a register.[57]  Courts have also affirmed larceny-from-the-person convictions where a thief stole a pocketbook from trousers that the victim was using as a pillow,[58] and where a car driver's billfold was taken off the seat immediately next to her.[59]  From these cases a clear rule emerges: the immediate presence test can only be satisfied if the property was in immediate proximity to the victim at the time of the taking.  In other words, the common-law meaning of "immediate presence" in the larceny-from-the-person context is consistent with the plain meaning of the word "immediate," which means "having no object or space intervening, nearest or next."[60]

---

[56] *People v Smith*, 121 P3d 243, 247-248 (Colo App, 2005).

[57] *Garland v Commonwealth*, 18 Va App 706, 710; 446 SE2d 628 (1994).

[58] *Banks*, 74 Ga App at 450-452.

[59] *Kobylasz*, 242 Iowa at 1166-1168.

[60] *Random House Webster's Unabridged Dictionary* (1998).  The dissent interprets our opinion as saying that "only in the rare instance that property is taken by 'use of force or threats of force to create distance between a victim and the victim's property' might property that is otherwise not affixed to the victim constitute a taking 'from the person.'" *Post* at 10.  Later on, the dissent states that we are essentially "equating 'immediate presence' with 'attached to the person.'"  *Post* at 10 n 30.  This is not true.  As we explained, the immediate presence test is satisfied when a defendant takes "property from the physical person *or* immediate presence of a victim."  (Emphasis added.)  Physical attachment is sufficient, but not necessary to satisfy the immediate presence test.

## IV. APPLICATION

Even when viewed in the light most favorable to the prosecutor, the facts of this case do not satisfy the immediate presence standard, which includes actual possession, or the constructive-presence exception. In this case, the loss-prevention officer was not in possession of the property at the time that it was taken. The record established only that she was "fairly close" to defendant in Macy's. At the moment defendant actually completed the taking by putting the perfume set into her bag, the loss-prevention officer was following defendant through the store while pretending to be another shopper.[61] Even though the loss-prevention officer remained close enough to observe defendant's behavior and was also at times within earshot of her, there was ample "intervening space" between the alleged victim and the property that defendant took, such that defendant did not take the perfume set from the *immediate* presence of the victim.

Notwithstanding the intervening space between the alleged victim and the stolen property, the jury still convicted defendant of larceny from the person. This conviction was arguably reasonable under the current jury instruction, CJI2d 23.3, which contains the phrase "immediate area of control." The jury may have interpreted this phrase to mean that a larceny from the person could occur in an area that the victim was responsible for, even if the taking was not from the victim's immediate presence. However, as mentioned above, a finding that the taking occurred within the victim's

---

[61] In a larceny case, the crime is completed when the taking occurs. *Randolph*, 466 Mich at 543.

"immediate area of control" does not satisfy the from-the-person element absent a finding that the taking was from the victim's person or immediate presence.

While the Court of Appeals described the immediate presence standard using the colloquial phrase "personal space,"[62] it correctly applied the immediate presence standard. Thus, the Court of Appeals rightly concluded that because defendant did not take any property from the loss-prevention officer's immediate presence, she did not commit a larceny from the person. And although the prosecutor alleged that defendant used force to retain possession of the perfume set after she had stolen it, there was no evidence that defendant used force or threats to separate the victim from the perfume set before it was taken. Consequently, the constructive-presence doctrine does not apply in this case. For these reasons, we affirm the judgment of the Court of Appeals, which reversed defendant's conviction.

Finally, there is a related common-law doctrine that provides additional support for our conclusion. At common law, courts treated the taking of merchandise off a shelf or rack as a larceny from a building, not larceny from a person.[63] Such takings were considered larcenies from a person only if an employee had been exercising direct control over the specific property at the time of the taking. As Professor Perkins explains,

> Goods on open shelves, goods standing on the floor, goods arranged on tables or counters are normally treated as within the protection of the building. One distinction, however, is to be noted. If a jewel or other valuable thing, normally kept out of open reach of customers, is placed on the counter under the eye of the storekeeper or clerk while it is being

---

[62] *Smith-Anthony*, 296 Mich App at 418.

[63] See Perkins & Boyce, pp 340-341.

examined by a customer, this is regarded as under the personal protection of the storekeeper or clerk at the moment, rather than under the protection of the building; whereas articles placed on the counter with the expectation that they will remain there all day, unless purchased, are under the protection of the building.[64]

Here, the dissent asserts that the loss-prevention officer had "personal protection and rightful control" over the gift box because she was "[a]n employee of Macy's responsible for preventing thefts of Macy's store items."[65] While we agree that a loss-prevention officer has a specific duty to prevent theft, that duty, standing alone, does not bring the gift box within the loss-prevention officer's immediate presence. For the perfume set to be under her personal protection for the purposes of a larceny from her person, she would have had to have taken possession of the merchandise at issue before defendant pilfered it.[66] Without this act of dominion, the perfume set remained only under the "protection" of the store. As a result, defendant did not take any property from the person of the loss-prevention officer. This provides additional support for our conclusion that the Court of Appeals properly reversed defendant's conviction.

## V. THE DISSENT'S RISK-OF-ALTERCATION TEST

In explaining its interpretation of the law, the dissent describes its test for whether a taking occurs in the immediate presence of a victim as whether "a taking of such

---

[64] *Id.*

[65] *Post* at 17.

[66] See Perkins & Boyce, p 340 (internal citation omitted) ("If property is in the pocket of some person within the building, or under his personal care at the moment in some other way, it is not regarded as within the protection of the building . . . [and t]he stealing of such property . . . [is a] larceny from the person.").

property triggers a substantial risk that a violent altercation will occur."[67] The most significant problem with this new test is that it expands the prohibited taking zone well beyond a person's immediate presence and into a large and undefined area.[68] The limits of this new prohibited taking zone are difficult to discern and likely arbitrary. A victim could plausibly observe a thief from 100 feet away and yet still have a chance of catching up to and confronting the thief if the victim chose to do so. Hence, even a taking at this distance could trigger "a substantial risk that a violent altercation will occur." Because the typical store theft occurs well within this range, it would seem that, under the dissent's proposed standard, most routine shoplifting incidents could be charged as larcenies from the person. That result conflicts with the established limits of the immediate presence standard.[69]

## VI. CONCLUSION

Michigan law requires a taking from the person or immediate presence of a victim to satisfy the from-the-person element for the crime of larceny from the person. This

---

[67] *Post* at 19.

[68] *Id.* While this Court has stated before that "larceny from the person involves a substantial risk of physical force," *Perkins*, 473 Mich at 634, that statement was merely an explanation of the Legislature's *purpose* in enacting the statute, not a description of the prohibited taking zone.

[69] Although the dissent tries to show that its test has limits by listing "a few non-exhaustive examples" that do not create a substantial risk of altercation, *post* at 18, it is difficult to discern how these examples fail to satisfy the dissent's own test. For example, it seems there would still be a "risk of altercation" in the case of "a security guard who observes [a theft] via closed-circuit monitor," so long as there was still a chance that the security guard could leave the monitor and confront the thief.

standard is satisfied when the defendant takes property that is in the physical possession of a victim or property that is in immediate proximity to a victim when the taking occurs. Only in the rare larceny-from-the-person case in which the constructive-presence exception applies may a taking outside of a victim's immediate presence satisfy the from-the-person element. The 2004 amendments to Michigan's robbery statute did not change these established requirements.

In this case, there was no evidence that defendant took property that was in the physical possession of or immediate proximity to the loss-prevention officer, and there was no evidence that defendant used force or threats to distance the loss-prevention officer from the property at the time of the taking. As a result, there was insufficient evidence that defendant took property "from the person" of the loss-prevention officer. The Court of Appeals properly reversed defendant's conviction, so we affirm the judgment of Court of Appeals.

David F. Viviano
Robert P. Young, Jr.
Michael F. Cavanagh
Bridget M. McCormack

23

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

V

No. 145371

CHANDRA VALENCIA SMITH-
ANTHONY,

     Defendant-Appellee.

_____

MARY BETH KELLY, J. (*dissenting*).

We granted oral argument on the application to consider the meaning of the "from the person" element of the larceny-from-the-person statute.[1] While I agree with the majority that the Legislature's 2004 amendment of the robbery statute[2] did not alter the meaning of that phrase as it applies to larceny from the person, I disagree with the majority's interpretation of that phrase to mean "immediate presence," such that there is no "space intervening" between the victim and the object taken. In adopting this new definition of "from the person," the majority today recasts Michigan's common-law history to support its narrow definition of "from the person" as requiring actual physical possession at the time of the taking and effectively transforms the crime of larceny from the person into either shoplifting or robbery. Because this has never been the law of this state, I respectfully dissent and would reinstate defendant's conviction.

_____

[1] MCL 750.357.

[2] See MCL 730.530, as amended by 2004 PA 128.

I.  ANALYSIS

A.  "FROM THE PERSON"

The phrase, "from the person," has acquired a long-settled meaning in our common law, and we thus construe this language consistent with its common-law understanding.[3]  In this regard I recognize, like the majority, that the origin of larceny from the person far predates Michigan's statehood.  As Sir William Blackstone recorded in 1771, the English common law distinguished between two types of larceny from the person: those accomplished by "privately stealing," like pickpockets, and those accomplished "by open and violent assault," the former of which constitutes larceny from the person and the latter of which is robbery.[4]  These crimes at common law, then, shared *identical* elements, both requiring that the taking be "from the person," except that robbery involved the additional element of fear and violence.[5]

Contrary to the majority's view then, the meaning of "from the person" in the English common law, did not "depend[] on whether the crime at issue was robbery or

---

[3] MCL 8.3a; Const 1963, art 3, § 7 ("The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.").

[4] 4 Blackstone, Commentaries on the Laws of England, p *241.

[5] As Sir Edward Coke recognized, the crimes were exactly the same except for the element of fear specific only to robbery.  3 Coke, The Third Part of the Institutes of the Laws of England (1797), p 68 ("By putting him in fear . . . this circumstance maketh the difference between a robber and cutpurse: both take it from the person, but this takes it [secretly and privately], without assault or putting in fear, and the robber by violent assault, and putting in fear.").  See 4 Blackstone, at **242-243 (describing the additional element of fear or violence inherent in the crime of robbery as "the criterion that distinguishes robbery from other larcenies" and noting that if the taking is not "from his person or in his presence" there is no robbery).

2

larceny from the person."[6]  Rather, in regard to the "from the person" element, both crimes required that the property taken be taken from the person or in his presence; as such, it was not necessary that the property be attached to the person, only that it be under his personal protection and control.[7]  Indeed, as Sir Edward Coke noted with respect to the phrase "from the person"—which Sir Coke expressly recognized was applicable to both robbery and larceny from the person—"that which is taken in his *presence*, is in law taken from his person."[8]

Michigan's first larceny-from-the-person statute was enacted in 1838, one year after Michigan became a state, and incorporated the common-law phrase "from the

---

[6] For this proposition, the majority appears to rely primarily on the *statutory* offense of larceny from the person that applied to pickpocketing and required that the property be attached to the person.  See 8 Eliz, c 4, § 2 (1565).  The majority assigns too much significance to this point of statutory law, as it does not inform the meaning of "from the person" at common law.

[7] As an example of a taking from "the person of another or in his presence," Blackstone referenced a man who "drives away [another person's] sheep or his cattle . . . ," which are clearly not attached to the person, but under his personal protection and control.  4 Blackstone at *243.

[8]  3 Coke at 69.  Modern legal commenters are in agreement that, traditionally, the phrase "from the person of another" includes a taking of property from the person's presence, which is a taking that occurs where the property is under the person's personal protection and control at the time of the taking.  See Perkins & Boyce, Criminal Law (3d ed), p 342 ("Property is stolen 'from the person,' if it was under the protection of the person at the time."); 4 Torcia, Wharton's Criminal Law (15th ed), § 458, p 15 ("[P]roperty is deemed to be within a victim's 'presence' when it is within his control."); 3A Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1804, p 471 ("[T]he statute defining the crime of larceny from a person protect[s] the person or immediate presence of the victim from invasion . . . .").

3

person."[9]  In the same tradition as the English common law, the Michigan Legislature has adopted statutes in which offenders are punished more harshly for larceny from the person than simple larceny, based on the recognition that stealing from a person's presence "involves a substantial risk of physical force . . . ."[10]  In 1931, the larceny-from-the-person statute was recodified as part of the Penal Code, and since then, continues to incorporate the common-law phrase "from the person."  That the Legislature has never altered the language "from the person" in the larceny-from-the-person statute, indicates that we should interpret that phrase consistent with the common-law rule at the time of enactment in 1838.  Mainly, that "from the person," as understood in the context of both larceny from the person and robbery, must be interpreted as property that is taken from the person's "immediate presence," which is property that was taken while under the person's personal protection and control.

In recognition that "from the person" is a common-law phrase, our jurisprudence has long-adhered to the phrase's common-law meaning.  Over nine decades ago, in

---

[9] The first version of the larceny-from-the-person statute is nearly identical to the current statute.  It provided:

> Every person who shall commit the offence of larceny, by stealing from the person of another, shall be punished by imprisonment in the state prison not more than five years, or in the county jail not more than one year.  [1838 RS, part 4, tit I, ch 4, § 16.]

[10] See *People v Perkins*, 473 Mich 626, 634; 703 NW2d 448 (2005) (explaining why the Legislature has chosen to subject a defendant who steals from the person of another to greater penalties than those imposed on a defendant who steals property outside a person's presence).

4

*People v Covelesky*,[11] this Court acknowledged that the phrase "from the person" must be interpreted as having the same meaning that those terms acquired at common law at the time that the statute was enacted.[12]  This Court construed the meaning of "from the person" consistent with the common law to mean property that is "taken 'in the owner's presence.'"[13]  The Court then expounded on the meaning of "presence," explaining that "presence" does not necessarily contemplate that the property be "'in actual contact with the person of the one from whom it is taken,'" but that the element is satisfied if the property taken is property that is under the person's "'personal protection and control.'"[14]  The Court explained that "personal protection," in turn, extends to "cover all one's effects within a not easily defined distance over which his presence may be deemed to

---

[11] *People v Covelesky*, 217 Mich 90, 97-98; 185 NW 770 (1921), superseded by statute as recognized by *People v Williams*, 491 Mich 164, 171-173; 814 NW2d 270 (2012). Although *Covelesky* was decided 10 years before the 1931 codification of the larceny-of-the-person statute, its discussion is relevant because, as explained, the Legislature has never departed from the phrase "from the person" in the larceny-from-the-person statute.

[12] *Covelesky*, 217 Mich at 97-98.  *Covelesky* discussed the meaning of "from the person" in the context of a robbery charge.  As explained, "from the person" was formerly an element of both robbery and larceny from the person and because the element has historically meant the same thing for both crimes the caselaw discussing "from the person" in the context of robbery is informative.

[13] *Id*., quoting 34 Cyclopedia of Law & Procedure, p 1798.

[14] *Covelesky*, 217 Mich at 97, quoting 23 R C L, pp 1142-1143.  Implicit in the notion that the property only need be within the person's personal protection or control is the principle that the person from whom the property is taken need not be the actual owner of the property; rather, it suffices if the property is merely under the person's possession or control.  See *Durand v People*, 47 Mich 332, 334; 11 NW 184 (1882) ("Neither is it necessary that the person assaulted must have been the actual owner of the property intended to be taken.  As against a wrong-doer, an actual possession or custody of the goods would be sufficient.").

5

have sway . . . ."[15]  As examples, the Court indicated a taking "from the person" may occur when the defendant, by causing fear or through violence, separates a person from the immediate presence of their property, and then takes the property from another room or even from another building.[16]

Following this Court's decision in *Covelesky*, this Court affirmed the common-law meaning of "from the person" nearly ten years later in *People v Cabassa*.[17]  There, the defendant robbed a gas station of which the victim was the attendant.  The Court explained that the defendant took property "from the person" because the attendant, although not the actual owner of the property stolen, was in actual possession and control of the money taken.[18]  In so holding, the Court again endorsed the view that "if [an object, due to the defendant's acts of violence or putting in fear,] be away from the owner, yet under his control, in another room of the house . . . it is nevertheless in his

---

[15] *Covelesky*, 217 Mich at 98, quoting 2 Bishop's New Crim Law (8th ed), §§ 1177-1178, p 677.

[16] *Id.* at 98-99.  Therein, we quoted two examples from 2 Bishop's New Crim Law at §§ 1177-1178, which indicate that a taking from another room or building satisfies the "from the person" requirement where the defendant is the cause of the person being in the other room or building:

> 5.  One who binds another in one room of his house, and compels him to tell where valuables may be found in another room; or confines another in his smokehouse fifteen steps from the dwelling house, commits robbery by feloniously taking the sought-for things from the other room or building.  [*Covelesky*, 217 Mich at 98.]

[17] *People v Cabassa*, 249 Mich 543; 229 NW 442 (1930).

[18] *Id*. at 546-547.

6

personal possession; and, if he is deprived thereof, it may well be said it is taken *from his person*."[19]

This Court quoted this same language more recently in *People v Gould*, where we upheld the defendant's conviction for larceny from the person where he took money from a restaurant's cash register and cigar box after "forc[ing] the waitress and her sole customer to lie face down on the floor of another room . . . ."[20] We held that the money was "in the possession and immediate presence of the waitress and customer . . . ."[21] In so holding, the Court rejected the argument that a defendant must take the property from its actual owner, explaining that it is sufficient for larceny from the person that """"the property be taken from the presence of the victim . . . [that is,] within his area of control."""""[22]

Five years after *Gould*, in *People v Chamblis*, this Court reaffirmed its commitment to "the view that the crime of larceny from the person embraces the taking of the property in the possession and immediate presence of the victim."[23] And, nearly fifteen years after *Chamblis*, in *People v Beach*, the Court again reaffirmed that "the

---

[19] *Id*. at 547, quoting *State v Calhoun*, 72 Iowa 432; 34 NW 194 (1887) (quotation marks omitted; emphasis added).

[20] *People v Gould*, 384 Mich 71, 74, 80; 179 NW2d 617 (1970).

[21] *Id*. at 80.

[22] *Id.*, quoting *Commonwealth v Subilosky*, 352 Mass 153, 166; 224 NE2d 197 (1967), in turn quoting Anderson, Wharton's Criminal Law & Procedure, § 553.

[23] *People v Chamblis*, 395 Mich 408, 425; 236 NW2d 473 (1975), overruled in part on other grounds *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002).

7

crime of larceny from the person embraces the taking of property in the possession and immediate presence of the victim."[24] Thus, in an unbroken chain of caselaw dating back nearly a hundred years, this Court has continually interpreted the phrase "from the person" to mean from a person's "immediate presence" and, consistent with this common-law meaning, has defined the scope of "immediate presence" to extend beyond a person's physical reach. Given these precedents, "immediate presence," as that phrase has been consistently interpreted in our jurisprudence, plainly includes property that is taken while under the person's personal protection and control.

I would therefore reverse the Court of Appeals' holding that "from the person" means that property must be taken from the victim's "personal space." The Court of Appeals' interpretation, which essentially ignores the common-law meaning of "from the person," appears motivated by a concern that the threat of violence inherent in the crime of larceny from the person is absent if the taking does not occur within the victim's "personal space."[25] This policy concern is unfounded: The common-law meaning of "from the person" accounts for the reality that property taken from a person's immediate presence may pose as great (or greater) a threat to the victim's personal safety, as the threat created by a taking that occurs within arm's reach. As this Court explained in

---

[24] *People v Beach*, 429 Mich 450, 484 n 17; 418 NW2d 861 (1988) (quotation marks and citation omitted).

[25] The Court of Appeals, *People v Smith-Anthony*, 296 Mich App 413, 418; 821 NW2d 172 (2012), cites *People v Perkins*, 262 Mich App 267, 272; 686 NW2d 237 (2004), aff'd 473 Mich 626 (2005), in support of its view, but *Perkins* does not support the proposition that the increased risk of violence is only activated when a defendant takes the property from the victim's "personal space."

8

*People v Perkins*, because "[i]n order to commit a larceny from the person, the defendant must steal something from a person in that person's presence," and, thus, "[u]nless the victim submits to the theft or does not notice the theft, physical force will almost certainly be used in response," "larceny from the person is a crime that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[26] Accordingly, it follows that the focus of whether property is taken from a person's immediate presence and is under his personal protection and control is on whether, at the time the taking occurs, the proximity between the defendant and the victim triggers a substantial risk that a violent altercation will occur.[27] I would therefore hold that "from the person" for purposes of the larceny-from-the-person statute means property taken in the person's immediate presence, which

---

[26] *Perkins*, 473 Mich at 632-633 (quotation marks and citation omitted).

[27] The analysis in this regard is not on the victim's conduct, i.e., whether or at what point the victim may choose to confront the thief, but simply on whether the taking occurs within a proximity that poses a substantial risk of physical altercation. While this distance cannot be defined with specificity and is dependent on the facts of each particular case, it is clear that no such risk of violence exits when a thief steals from a victim who observes the taking from a safe distance that presents no opportunity to retake the property. Accordingly, that a victim could, according to the majority, "plausibly observe a thief from 100 feet away, and yet still have a chance of catching up to and confronting the thief *if the victim chose to do so*," *ante*, at 22, unnecessarily fixates on the victim's conduct. Nor does this analysis place "difficult to discern" and "arbitrary" limitations on determining whether a taking occurs within a proximity that poses the risk of physical altercation; rather, the determinant of such proximity is simply common sense and what is objectively reasonable under the circumstances. For example, it is *implausible* that a taking, which occurs ten car lengths (approximately 100 feet) from the victim, could trigger a substantial risk that a violent altercation will occur.

9

includes property that is under the person's personal protection and control such that a taking of such property triggers a substantial risk that a violent altercation will occur.[28]

## B. THE MAJORITY'S NEW "IMMEDIATE PRESENCE" STANDARD

Notwithstanding this Court's long-standing adherence to the common-law meaning of "from the person," the majority narrowly defines this phrase to require that the taking occur within the victim's "immediate proximity," meaning that there can be no "intervening space" between the victim and the property taken.[29] In fact, according to the majority, only in the rare instance that property is taken by "use of force or threats of

---

[28] Contrary to the majority's assertion, this interpretation does not create an expansive "new test" for determining whether a taking occurs in the victim's immediate presence, but is plainly supported by over nine decades of our jurisprudence.

[29] In concluding that "immediate presence" is established only if property is taken "immediate[ly]" from the victim's person, the majority relies exclusively on the term "immediate" while completely ignoring the term "presence," essentially equating "immediate presence" with "attached to the person." As support for its new "immediate presence" standard, the majority relies on the common dictionary definition of the term "immediate." However, as acknowledged by the majority, "immediate presence" is a "technical phrase" that has "acquired a peculiar and appropriate meaning in the law," and thus "shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a; see also Const 1963, art 3, § 7. Consequently, it is not appropriate for the majority to consult a lay dictionary in its attempt to define this phrase.

Notwithstanding its reliance on common dictionary definitions, the majority asserts that it is "not true" that it has equated immediate presence with physical possession because under its standard, property taken either "from the physical person *or* immediate presence of a victim" is sufficient. *Ante*, at 18 n 60. However, there is no meaningful distinction between these two circumstances given that, under the majority's interpretation, the latter requires that there be no "intervening space" between the victim and the object, or that the object be physically "next" or "nearest" to the victim. In essence, then, to satisfy "immediate presence" under the majority's standard requires that, at the time of the taking, the property be physically touching, or otherwise physically next to, the victim without any intervening space, i.e., actual physical possession.

10

force to create distance between a victim and the victim's property" might property that is otherwise not affixed to the victim constitute a taking "from the person." This interpretation, however, inexplicably departs from this Court's jurisprudence, which holds that "immediate presence" "cover[s] all one's effects within a not easily defined distance over which his presence may be deemed to have sway."[30] Indeed, this Court has never held that an object must be, as the majority holds, "immediately next to the person" or effectively in the victim's actual physical possession in order for the taking to be in the person's "immediate presence." Thus, by adopting an interpretation that is incompatible with the well-established meaning of "immediate presence" as recognized in this state for nearly a century, the majority has created a "new test" that represents a sea change in Michigan's common law.

---

[30] *Covelesky*, 217 Mich at 98 (citation and quotation marks omitted). Because this Court's jurisprudence does not support the majority's interpretation of "from the person" to require that the property be "immediately next to the person at the time of the taking," the majority relies on caselaw from other jurisdictions, the factual circumstances of which (not surprisingly) support the majority's purported measure of immediate proximity, which necessarily requires that the property be attached to the victim's person. While the manner in which other states have construed their respective larceny-from-the-person statutes is entirely inapposite, I would be remiss not to note that multiple cases from other jurisdictions are also consistent with my interpretation of "from the person." See *State v Calhoun*, 72 Iowa 432; 34 NW 194, 196 (1887) (holding that "[i]f [property] be away from the owner, yet under his control, in another room of the house . . . it is nevertheless in his personal possession; and, if he is deprived thereof, it may well be said it is taken from his person."); *State v Jones*, 499 SW2d 236, 237-240 (Mo Ct App, 1973) (the defendant, who reached through the open passenger-side window and took the victim's purse off of the passenger seat as the victim was exiting her vehicle on the driver's side, was found to have taken property "from the person."); and *In re Welfare of DDS*, 396 NW2d 831 (Minn, 1986) (a radio that was not actually on the person of another but only in that person's presence was held to have been taken "from the person."). See also *Subilosky*, 352 Mass at 166.

11

Despite adopting an immediate presence standard that represents a vast departure from Michigan jurisprudence, the majority avoids overruling even a single case of this Court. Yet, the majority does not explain how it is able to do so where its holding conflicts with (1) all of our cases that have held that the Legislature codified the common-law understanding of the language "from the person" when it incorporated this language into the robbery and larceny-from-the-person statutes;[31] (2) all of our robbery cases that have held that "from the person" includes from the person's "immediate presence;"[32] (3) all of our larceny-from-the-person cases that have held that "from the person" includes from the person's "immediate presence;"[33] and (4) all of our cases that

---

[31] See, e.g., *Covelesky*, 217 Mich at 98-99 ("The words 'from the person of another,' found in our statutory definition of robbery, must be held to have been used in the same sense and with the same meaning that these terms had acquired at common law at the time the statute was enacted, and the offense of robbery under the statute may be committed by violence or putting in fear, and feloniously taking money or other things of value from the person or in the presence and under the immediate control and possession of the person assaulted.") (quotation marks and citation omitted).

[32] See, e.g., *Covelesky*, 217 Mich at 97 ("To constitute robbery, it is essential that there be a taking from the person. To satisfy this requirement, it is sufficient that property be taken in the owner's presence.") (quotation marks and citation omitted); *Cabassa*, 249 Mich 543.

[33] See, e.g., *Gould*, 384 Mich at 80 ("We hold that the taking of property in the possession and immediate presence of the waitress and customer in this case was sufficient to sustain a verdict against defendant Gould of larceny from the person."); *Chamblis*, 395 Mich at 425 ("We are committed to the view that the crime of larceny from the person embraces the taking of property in the possession and immediate presence of the victim."); *Beach*, 429 Mich at 485 (same); *Perkins*, 473 Mich at 633 ("In order to commit a larceny from the person, the defendant must steal something from a person in that person's presence.").

12

have held that larceny from a person was a necessarily included lesser offense of robbery (at least before 2004).[34]

Indeed, the majority reforms this state's common-law history, as well as English common law as previously explained in this dissent. In particular, the majority ignores the significance of the historical relationship between larceny from the person and robbery and the fact that our jurisprudence has consistently recognized that larceny from the person constitutes a necessarily included lesser offense of robbery.[35] It follows, then, that all of the elements of robbery and larceny from the person are exactly the same, including "from the person," except for the additional element of force or violence inherent *only* in the crime of robbery. The majority, however, has interpreted "from the person" to mean something entirely different from how this phrase was understood in the context of robbery before the 2004 amendments to the robbery statute, thereby retroactively transforming larceny from the person into a cognate offense, rather than a lesser included one.[36]

---

[34] See, e.g., *People v Calvin*, 60 Mich 113, 121; 26 NW 851 (1886) ("Each of these offences under our statutes and at common law, to-wit, robbery and larceny from the person, include the stealing and taking of property from the person,--one by force and violence; the other need not be with force or violence; it may be by stealth."); *Chamblis*, 395 Mich at 424 ("Larceny from the person is 'robbery' *absent* the element of force") (emphasis in the original.); *Beach*, 429 Mich at 484 n 17 ("Robbery is committed only when there is larceny from the person, with the additional element of violence or intimidation") (quotation marks and citation omitted.).

[35] See, e.g., *Calvin*, 60 Mich 113; *Chamblis*, 395 Mich 408; *Beach*, 429 Mich 450. See also Perkins, Criminal Law (2d ed), pp 279, 281.

[36] The majority makes the pronouncement, in dicta, that as a result of the 2004 amendment of the robbery statute, larceny from the person "is no longer a necessarily included lesser offense of robbery." *Ante*, at 17 n 53. However, this issue has never been

13

Next, the majority invents a tension in the evolution of the meaning of "immediate presence," indicating that Michigan law once required actual physical possession, not merely immediate presence, to establish the from-the-person element for larceny from the person.[37] The majority uses this supposed conflict in our caselaw to justify its departure from the unabated meaning of "immediate presence." However, the conflict referenced by the majority simply does not exist. For example, the majority infers from the facts in *People v Gadson*,[38] that our jurisprudence once interpreted "immediate presence" to require that the property be physically attached to the person. *Gadson*, however, provides no analysis regarding the meaning of "from the person," but simply held that larceny from the person was not established where the evidence was insufficient to prove that a

_____

litigated in this Court. Furthermore, defendant has waived the issue whether larceny from the person remains a lesser included offense of robbery in light of the 2004 amendment because defendant requested an instruction on larceny from the person as a lesser included offense of robbery and did not raise the issue on appeal. See *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011) (indicating that counsel's express approval of the instructions constitutes a waiver of any instructional error). In any event, the meaning of "from the person" is unaffected by the 2004 amendment of the robbery statute, given that the majority agrees that the amendment had no effect on the meaning of "from the person" in the larceny-from-the-person context.

[37] This assertion is not, as the majority seems to suggest, dependent on this Court's decision in *Covelesky*, but is simply consistent with the meaning of "from the person" as that phrase was interpreted at common law. Again, this Court's caselaw does not support the majority's supposition that Michigan ever adopted the minority view and required an actual taking from the physical person of the victim. The authorities cited by the majority actually support this point.

[38] *People v Gadson*, 348 Mich 307; 83 NW2d 227 (1957)

14

theft occurred in the first instance. There is no other case from this Court that adopts a standard other than the common-law one articulated in part A of this dissent.[39]

In a similar manner, the majority recharacterizes *People v Gould* as creating a previously unrecognized "constructive presence" exception to its immediate presence standard. Under this alleged exception, property that is not attached to the victim at the time of the taking will be deemed to have been taken "from the person," if the victim could have retained possession of the property but for the defendant's use of force or intimidation to separate the victim from his property. The majority premises the creation of this exception, in part, on the idea that a defendant may not negate the from-the-person element for purposes of establishing robbery by using force or intimidation to prevent the victim from retaining possession of his property. Although such a principle itself is not objectionable, a fair reading of *Gould* indicates that it in no way stands for that principle nor did it articulate, let alone adopt, the majority's new "constructive presence" exception. Rather, as previously explained, *Gould* held that the taking of property in the victims' immediate presence and within their area of protection and control was sufficient to sustain a conviction of larceny from the person, notwithstanding that the victims were not in actual physical possession of the property at the time of the taking.[40]

---

[39] The majority's reliance on two Court of Appeals cases, *People v Stevens*, 9 Mich App 531; 157 NW2d 495 (1968), and *People v Johnson*, 25 Mich App 258; 181 NW2d 425 (2005), is also not persuasive because we are not bound by these lower court decisions.

[40] The majority "believe[s] that *Gould* should [not] be read as a wholesale importation of robbery doctrine into larceny-from-the-person law" and that the standard articulated in this dissent "expands the prohibited taking zone . . . well beyond the standard in *Gould*." *Ante*, at 15 n 47. The majority's belief, however, is premised on its use of the phrase "from the person" as having one meaning in the context of robbery and having another

15

Perhaps even more concerning is the result of the majority's new "immediate presence" standard, in the context of takings from a retail establishment. By holding that there can be no "intervening space" between the victim and the property taken unless its "constructive presence" exception applies, the majority essentially eviscerates the offense of larceny from the person in all instances not involving a taking where the property is physically attached to the victim. That is, if, in the absence of actual physical possession, larceny from the person can only be established when the "constructive presence" exception applies, then the actual offense committed would be robbery because the offense would necessarily involve force or intimidation. Comparatively, if, in the absence of force or intimidation, larceny from the person can only be established when property is attached to the victim at the time of the taking, then the absence of property physically attached to the victim places the crime within the definition of retail fraud.[41] Under the majority's standard, then, the prosecutor's discretion to pursue a charge of larceny from the person in the context of a taking from a retail establishment is limited to those very rare instances in which the defendant is actually a pickpocket.

---

different meaning in the context of larceny from the person, which, of course, is unsupportable under our law. Moreover, the majority does not explain how this dissent's interpretation of "from the person" expands the "taking zone" beyond that recognized at common law.

[41] See MCL 750.356c and MCL 750.356d. The majority concedes that Michigan is an "immediate presence" jurisdiction rather than one that requires the victim to have actual physical possession of the property taken. Notwithstanding this concession, in adopting the "constructive presence" exception the majority has transformed larceny from the person into a crime that can only be committed when the victim has actual physical possession of the property taken.

In summary, the majority's new immediate presence standard overrules nearly one hundred years of this Court's jurisprudence, without any mention of stare decisis, recasts the historical understanding of "from the person" in both Michigan's and England's common law, and unduly narrows the crime of larceny from the person such that, effectively, it is conflated with either shoplifting or robbery. I would instead adhere to this Court's long-standing recognition of that phrase which, consistent with its meaning at common law, includes the taking of objects that are within a person's immediate presence and under that person's personal protection and control.

## C. APPLICATION

Application of the unabated meaning of "from the person" to the facts of this case, leads to the conclusion that the evidence was sufficient to support defendant's conviction. Macy's loss-prevention officer Krumbhaar testified that defendant, after trying on a pair of shoes, completed the larceny by pushing the gift box into her grocery bag. At that time, Krumbhaar observed the taking from a distance close enough to hear defendant interact with a sales associate. As an employee of Macy's responsible for preventing thefts of Macy's store items, Krumbhaar had personal protection and rightful control over the gift box at the time of taking.[42] Taking these facts in a light most favorable to the

---

[42] The majority concludes that for Krumbhaar to establish personal protection over the gift box, "she would have had to have taken possession of [it] before defendant pilfered it." However, actual possession, although sufficient, has never been required in our jurisprudence. See *People v Randolph*, 466 Mich 532, 556; 648 NW2d 164 (2002) (MARKMAN, J., dissenting), superseded by statute as recognized by *Williams*, 491 Mich at 171-173 ("[A]lthough [the] defendant had initially seized items from the shelf of the Meijer store, the security guards continued to exercise protective custody and control over that property, because they continued to monitor [the] defendant and they still had the right to take the property back. Therefore, the property was 'in [their] presence'

17

prosecution, a reasonable jury could conclude beyond a reasonable doubt that defendant unlawfully took the gift box from Krumbhaar's immediate presence. Krumbhaar's testimony that defendant was within her "visual range" and was "fairly close," is sufficient to satisfy the meaning of "from the person," contrary to defendant's argument. Rather, as previously explained, "from the person" includes the taking of objects that are within a person's immediate presence and under that person's personal protection and control such that a risk of a physical altercation exists, as in the instant case. I would therefore conclude that the evidence was sufficient to support the jury's finding that the gift box was taken "from the person of another."

To reach this conclusion, and affirm this Court's adherence to the common-law meaning of "from the person," is not to say that all shopliftings constitute larceny from the person. Indeed, there are multiple scenarios where a defendant who is caught shoplifting is guilty of only retail fraud or simple larceny rather than larceny from the person. A few non-exhaustive examples of such instances include (1) a defendant who completes the larceny without being seen; (2) a defendant who completes the larceny while a security guard observes via closed-circuit monitor; (3) a defendant who is stopped by a security guard because of a suspicious bulge in the defendant's clothing or other suspicious behavior following the completed larceny; or (4) the defendant triggers the store's security alarm after the completed larceny and is stopped by a security

within the meaning of MCL 750.530 when [the] defendant, by assault, attempted to unlawfully deprive the security guards of the property."). The majority in *Randolph* in no way disagreed with Justice MARKMAN's conclusion that the property was taken "in the presence" of the security guards, even though they did not actually possess the property before it was taken.

18

guard.[43] While defendant suggests that she could, at most, be guilty of third-degree retail fraud, it is clear that none of these scenarios existed and the evidence, in my view, supports a jury finding that defendant took the gift box from Krumbhaar's person.[44]

## IV. CONCLUSION

The majority's new rule deviates from the historical meaning of "from the person" as it has been understood in this Court's jurisprudence. By defining "immediate presence" to require that there be no "intervening space" between the person and object taken, the majority has effectively ruled that the property must be attached to the person. This Court, however, has never, until today, held that immediate presence requires that the victim have actual physical possession of the property at the time of the taking.

I would adhere to this Court's well-established jurisprudence and hold that "from the person" for purposes of the larceny-from-the-person statute means property that is

---

[43] Given this guidance, it is simply untrue that "most routine shoplifting incidents could be charged as larcenies from the person." *Ante*, at 22. While the majority believes that these examples "fail to satisfy th[is] dissent's own test," based on its speculation that a risk of altercation "would still" arise where a security guard observes a theft via closed-circuit monitor, the majority again misapprehends the focus of our analysis by wrongly concerning itself with the victim's conduct. *Ante*, at 22 n 69.

[44] Defendant also argues that the evidence only supports a conviction for third-degree retail fraud because Macy's, and not Krumbhaar, owned the gift box and suggests that she was mischarged. However, as previously explained, "from the person of another" does not require a showing that the property was taken from the actual owner; the fact of custody and possession is enough. *Durand*, 47 Mich at 334; *Cabassa*, 249 Mich at 546-547. Further, that the evidence may have supported a charge of third-degree retail fraud is irrelevant; just because the evidence may have supported that charge, as well as a charge for larceny from the person, does not mean that defendant cannot be convicted of the latter. The prosecutor has broad discretion in selecting the charges it pursues against a defendant, *People v Venticinque*, 459 Mich 90, 100; 586 NW2d 732 (1998), and, notably, it was defendant who requested an instruction on larceny from the person.

19

taken from a person's "immediate presence," which includes property that is under the person's personal protection and control such that a taking of such property triggers a substantial risk that a violent altercation will occur. Applying the legally correct understanding of the larceny-from-the-person statute, and considering the evidence in a light most favorable to the prosecution, the evidence was clearly sufficient to support defendant's conviction. I would therefore reverse the judgment of the Court of Appeals and reinstate defendant's conviction for larceny from the person.

Mary Beth Kelly
Stephen J. Markman
Brian K. Zahra

20